Abdullah M. HAJJAR, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–03–00745–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 23, 2004.

Discretionary Review Refused
Sept. 14, 2005.

Paul Nugent, Houston, TX, for Appellant.

Julie Klibert, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices KEYES and ALCALA.

## OPINION

SHERRY RADACK, Chief Justice.

Abdullah Hajjar, appellant, pleaded not guilty to assault on a family member, his wife. The jury found him guilty and the trial court assessed punishment at one year community supervision, a $1,000 fine, and 10 days in jail as a condition of his community supervision. In five points of error, appellant contends that (1) the trial court undermined appellant's presumption of innocence, thereby denying his right to a fair trial and effective assistance of counsel at trial; (2) the trial court erred in allowing the State to identify an exhibit as a "booking photo"; (3) the trial court erred in admitting evidence that was of little or no probative value and unfairly prejudicial; (4) the trial court erred in permitting the State's repeated use of inadmissible "backdoor" hearsay evidence; and (5) appellant was denied his right to a fair trial and effective assistance of counsel at trial. We affirm.

## BACKGROUND

Around 11:30 p.m. on December 24, 2002, appellant left his wife, Rana, and their two children at home to go pick up his mother in Houston. After he left the house, Rana took the children and drove somewhere. Appellant returned with his mother to an empty house. In the early morning hours of December 25, when Rana and their children pulled into the driveway, appellant was waiting for her.

According to Rana, when she refused to get out of the car, appellant pulled her out of the car by her hair and kicked her in the head and stomach while she was on the ground.

According to appellant's mother, Rana refused to get out of the car. Appellant reached into the car to retrieve the keys and dragged Rana out of the car, where she threw herself on the ground, causing her injuries. While Rana was swinging at him, appellant apparently attempted to calm her down by hugging her. When she broke away from appellant, Rana ran toward a neighbor's house screaming.

Anthony and Angela Burlingame, neighbors from across the street, heard a scream coming from outside their house and then, a few seconds later, a second scream, which Anthony characterized as a scream of terror. Once outside, they saw Rana running into their yard and appellant chasing her. As Rana reached the Burlingames' front porch, appellant yelled an expletive at Rana. Anthony asked appellant what was going on, but appellant turned around and walked back to his house in silence. Rana explained to Angela what had happened. Rana told her that she had been beaten by appellant and she wanted to call the police. Anthony noticed that Rana's face was bleeding and that she had a knot on the top of her head, cuts on

her elbows and hands, and scrapes on her knees.

While Rana spoke with Angela, Anthony went to appellant's house to speak with him. Anthony informed appellant that, at Rana's request, he had called the police. Appellant told Anthony that he had not hit Rana. Shortly thereafter, a number of police officers, responding to a family disturbance complaint, arrived at the scene. At Rana's request, an EMS ambulance was called to the scene, but she was not transported to a hospital.

After conducting an investigation, appellant was arrested by the police officers. The officers took appellant to the police station and booked him. As part of that process, the police took a booking photograph of appellant.

### RIGHT TO A FAIR TRIAL

In his first point of error, appellant asserts that the trial court erred in requesting that he indicate in front of the jury which witnesses he might call to testify at trial. Specifically, appellant contends the trial court's request undermined the presumption of innocence to which appellant was entitled, thereby violating his rights to a fair trial and to effective assistance of counsel guaranteed to him by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

■ Before either side delivered its opening statement, the State apparently invoked the rule.[1] *See* TEX.R. EVID. 614; TEX.CODE CRIM. PROC. ANN. art 36.03 (Vernon Supp.2004–2005). When the trial court invokes "the rule," it excludes witnesses from the courtroom pursuant to Rule 614, which provides in relevant part that "at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." TEX.R. EVID. 614. The purpose of the rule is to prevent the testimony of one witness from influencing the testimony of another. *Martinez v. State,* 867 S.W.2d 30, 40 (Tex.Crim.App.1993); *Phillips v. State,* 64 S.W.3d 458, 459 (Tex.App.-Houston [1st Dist.] 2001, no pet.). The trial court wanted to determine which witnesses were to testify so the judge could swear them in and exclude those witnesses so that they could not hear the testimony of other witnesses. The trial court asked the attorneys on both sides to help him identify whom they intended to call as witnesses. Defense counsel stated that he was not sure whom he was going to call and, instead, requested that all witnesses subpoenaed by the State be sworn in as witnesses. The trial court rejected this suggestion and told defense counsel that he would only swear in and exclude from the courtroom those who, in good faith, were going to be called.

After the trial court swore in those whom the State affirmatively indicated it intended to call as witnesses, defense counsel repeated his request that all people under subpoena be sworn in, to which the trial court responded that he would swear in only those whom defense counsel intended to call or whom there was a chance defense counsel would call. Defense counsel responded that he did not have the burden of proof and that he could not tell whether or not he was going to call as witnesses any of those who were subpoenaed by the State. The trial court repeated its denial of defense counsel's request, but defense counsel then interjected that he could not tell whether he would call them until he heard the evidence. At this point, the trial court sought confirmation

---

1. Although the State's invocation of the rule is not in the appellate record, the record does reflect the trial court's recognition that the rule had been invoked.

that "there is a chance you may call them," to which defense counsel answered in the affirmative. The subpoenaed witnesses were then duly sworn in. The defense did not subpoena any witnesses apart from those subpoenaed by the State.

After appellant entered his plea before the jury and after both sides presented their opening statements, defense counsel attempted to make a record, outside the jury's presence, regarding the issue of swearing-in the subpoenaed witnesses. Defense counsel reiterated that he did not know whom he was going to call until he heard the evidence put on by the State, that he did not have the burden of proof, and that he objected to the manner in which the court "put [him] on the spot in front of the jury by repeated questions from the Court, 'Are you going to call them. Are you going to say in good faith [that you might call them].' "

■■■ Appellant did not timely object to the trial court's request for appellant to indicate whom he would put on the stand to testify on the basis of undermining appellant's presumption of innocence. To preserve a complaint for appellate review, a defendant must object timely to the trial court. *See* Tex.R.App. P. 33.1; *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex.Crim.App. 1996). However, an appellate court may "tak[e] notice of fundamental errors affecting substantial rights although they were not brought to the attention of the [trial] court." Tex R. Evid. 103(d); *see Jasper v. State*, 61 S.W.3d 413, 420 (Tex.Crim.App. 2001); *Blue v. State*, 41 S.W.3d 129, 132 (Tex.Crim.App.2000) (plurality op.). In *Blue*, a plurality of the Court of Criminal Appeals held that a trial court's com-

ments,[2] "which tainted [the defendant's] presumption of innocence in front of the venire, were fundamental error of constitutional dimension and required no objection." *Blue*, 41 S.W.3d at 132; *see Jasper*, 61 S.W.3d at 421. Even if we were bound to follow the plurality opinion in *Blue*, a matter we do not decide, we conclude that appellant's complaints here do not rise to the level of fundamental error. *See Jasper*, 61 S.W.3d at 421.

■■■ Interjections by a trial court that correct misstatements or misrepresentations of previously admitted testimony, or that clear up points of confusion, are not improper. *See id.* ("A trial judge has broad discretion in maintaining control and expediting the trial."). Here, the trial court's interjections sought to clear up a point of confusion about whether appellant might call any of the people on the subpoena list as witnesses. The interjections did not convey the court's opinion about appellant's guilt or innocence. The trial court did not violate appellant's fundamental rights even if the trial court appeared irritated at appellant in refusing to, at first, indicate whom he intended to call as witnesses. *See id.* (holding that irritation by trial court at attorney does not translate to indication of court's views about defendant's guilt or innocence).

Accordingly, we overrule appellant's first point of error.

### Probative Value of Evidence

In his second and third points of error, appellant contends that the trial court erred in admitting into evidence State's Exhibit 17 and in permitting the State to identify State's Exhibit 17 as a "booking

---

2. In *Blue,* the trial court informed the venire of the following: the defendant and the State were bargaining over how the defendant would plead; the defendant could not decide whether to plead; the defendant was delaying the trial; the judge wanted the defendant to plead guilty to save time; and the trial court felt obliged to apologize for the delay caused by the defendant. *Blue,* 41 S.W.3d at 130.

photo" of appellant. Specifically, appellant contends that the "booking" photograph of appellant, State's Exhibit 17, was of little or no probative value concerning any disputed issue and was offered by the prosecution and classified as a "booking photo" by the State's witness solely to prejudice the jury against appellant.[3] The State argues that the evidence was properly admitted to rebut appellant's claim of self-defense.

We review the trial court's determination of admissibility under an abuse-of-discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 378–79 (Tex.Crim. App.1990); *Roberts v. State*, 29 S.W.3d 596, 600 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd).

■ Here, appellant objected that the photograph was irrelevant and that, even if relevant, was more prejudicial than proba-

tive. TEX.R. EVID. 402, 403. We must first determine, therefore, whether the evidence is relevant. Evidence is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX.R. EVID. 401. Appellant's defense to the charges was that he acted in self-defense. The photograph was introduced to rebut this claim of self-defense by showing that there was no sign of injuries to the appellant. Although some of the testimony specified that Rana had hit appellant in areas not shown in the photograph, there was also testimony that Rana had hit appellant without specifying where. Based on these facts, the photograph was relevant.

■ Having determined that the evidence is relevant, we must determine

---

**3.** The following exchange occurred in front of the jury

 [State]: Let the record reflect I'm now showing you what's been marked as State's Exhibit 17. Do you recognize this?

 [Witness]: Yes, ma'am, that's the defendant.

 [State:]: And what is it?

 [Witness]: It's his picture—

 [Defense counsel]: Judge, I'm going to object to her testifying to what it is. Has that been introduced?

 [State]: I'm attempting.

 [Defense counsel]: Judge, I would object to her testifying to what it is before I've seen it, before it's been introduced.

 [Court]: You can come—up or, first, otherwise, you can ask something that doesn't identify what the subject photo is. You can say does this accurately—

 [State]: Without telling me what it is, do you recognize it?

 [Witness]: Yes.

 [State]: What is it?

 [Defense counsel]: Excuse me, Judge. She's going to testify as to what the photo is before it's been shown to me and before it's been introduced in evidence?

 [State]: Judge, I'm trying to lay the predicate to get the photo admitted and the last

step to admission for predicate of a photo is showing the Defense counsel.

 [Court]: The objection is overruled.

 [State]: What is it?

 [Witness]: *It's the picture you take when you go get booked into jail.*

 [State]: Booking photo?

 [Witness]: *Booking photo.*

 [State]: Does that picture accurately depict how the defendant appeared on December 25th of last year when you saw him?

 [Witness]: Correct.

 [State]: Do you think this would aid the jury in understanding this case?

 [Witness]: Uh-huh.

 [Defense counsel]: *Objection, Your Honor.*

 [Court]: What is the objection?

 [Defense counsel]: I would object. A booking photo has nothing to do with this case; and they are introducing it to prejudice my client and it has nothing to do with anything, the fact that he was booked. *And the booking photo is irrelevant* to whether or not the State can prove beyond a reasonable doubt the charge alleged. *The booking photo has no probative value.* It's simply not relevant. *It's being offered to prejudice Mr. Hajjar.*

 (emphasis added).

whether the risk of unfair prejudice substantially outweighs the probative value. Tex.R. Evid. 403; *Goldberg v. State,* 95 S.W.3d 345, 366 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd). Relevant evidence may be excluded if its potentially prejudicial effect outweighs its probative value. *Swarb v. State,* 125 S.W.3d 672, 681 (Tex. App.-Houston [1st Dist.] 2003, pet. dism'd); Tex.R. Evid. 403. The reviewing court, using an abuse-of-discretion standard, should "do more than decide whether the trial judge did in fact conduct the required balancing between probative and prejudicial values; the trial court's determination must be reasonable in view of all relevant facts." *Santellan v. State,* 939 S.W.2d 155, 169 (Tex.Crim.App.1997) (citations omitted). A Rule 403 balancing test includes, but is not limited to, the following factors:

 (1) how probative is the evidence;

 (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way;

 (3) the time the proponent needs to develop the evidence; and

 (4) the proponent's need for the evidence.

*Reese v. State,* 33 S.W.3d 238, 240–41 (Tex. Crim.App.2000).

 The photograph, which was taken after appellant was charged at the police station on the night he committed the offense, was introduced by the State to rebut appellant's defensive theory that he acted in self-defense after Rana attacked him. Appellant suggests numerous prejudicial inferences that the jury could possibly have drawn from the introduction of the photograph, including that extra steps were necessary to control him, that the police feared he might return to his home that night, that he was still in jail at the time of the trial, and that it might suggest that he had a prior criminal record. All of these suggested inferences focus on the fact that the jury became aware that appellant was booked; there is no objection to the content of the photograph. Appellant's argument turns on whether, by being characterized as a booking photograph the picture was rendered unfairly prejudicial.

Since the evidence was presented to rebut a defensive theory of the appellant, the evidence was strongly probative. The photograph demonstrates appellant's appearance only a few hours after the offense was committed. The photograph helps the jury by allowing them to see whether appellant sustained any injuries, instead of relying solely on the testimony of one officer who claimed he saw no sign of appellant's injuries. The photograph does not have the potential to impress the jury in some irrational but indelible way because appellant concedes that "a juror could not possibly have known that the photograph had been taken [at the police station] by simply looking at the photograph." Furthermore, the evidence was addressed for only a very brief period of time.

The mere classification of State's Exhibit 17 as a "booking photo" is not itself unfairly prejudicial. Using the term "booking photo" to describe a photograph of a defendant in a criminal trial does not reveal any fact about a defendant that is not already known to the jury when they are first told by the trial judge that they will be sitting to determine the guilt or innocence of a people charged with a crime. A "booking" photograph reveals that a criminal defendant had his photograph taken at a jail when he was first booked after being charged with a crime. This is the only information the "booking" photograph of appellant revealed to the jury. As a juror in a criminal trial, one already knows that the defendant has gone through the process of being booked and

charged with a crime. Therefore, the mere classification of a photograph that was taken at a jail as a "booking" photo does not reveal additional prejudicial facts about a defendant. Identifying State's Exhibit 17 as a "booking photo" of appellant was not unfairly prejudicial.

 Rule 403 favors the admission of relevant evidence and carries with it a presumption that probative evidence will be more probative than prejudicial. *See Long v. State*, 823 S.W.2d 259, 271 (Tex. Crim.App.1991). The alleged prejudice suggested by appellant does not overcome this presumption. The suggestions that the jury might believe that booking the appellant was an extraordinary step required to protect appellant's wife are unsupported. Contrary to appellant's suggestion, the jury could not have inferred from this evidence that appellant was still in jail at the time of trial because it was referred to merely as a "booking" photograph, which implies a photograph taken as appellant was processed on the assault charges. Finally, appellant fails to explain how the "booking" photograph, describing his appearance on the night of his arrest for assaulting his wife, would suggest that he had a prior criminal history.

Having reviewed the record, we find the trial court acted reasonably when it admitted into evidence the photograph of appellant. Consequently, the trial court did not abuse its discretion in admitting this photograph.

Accordingly, appellant's second and third points of error are overruled.

### "Backdoor" Hearsay Evidence

In his fourth point of error, appellant contends that the trial court erred when it admitted evidence of statements appellant's mother made to an investigating officer and statements appellant's son made to appellant's mother, regarding whether appellant's son had acknowledged that he witnessed the offense. Moreover, appellant contends that the State's use of improper "backdoor" hearsay evidence constituted purposeful prosecutorial misconduct.

We review the trial court's decision to admit evidence under an abuse-of-discretion standard. *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App.2000); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op. on reh'g); *Gurka v. State*, 82 S.W.3d 416, 420 (Tex.App.-Austin 2002, pet. ref'd). As long as the trial court's ruling was within the zone of reasonable disagreement, the appellate court will not reverse the ruling. *Montgomery*, 810 S.W.2d at 391.

### Officer Katrib's Testimony

Appellant complains of two separate instances of alleged backdoor hearsay evidence introduced at trial. Appellant first complains of the following testimony by Deputy Katrib on direct examination:

[State]: Okay. After you spoke with the mother, the defendant's mother, did you speak with anyone else?

[Katrib]: Yes, ma'am, I did.

[State]: And who was that you spoke with?

[Katrib]: The grandmother had indicated and from-

[Defense]: Excuse me, I'm going to object.

[Court]: Don't say what she said.

[Katrib]: Okay.

[Court]: Sustained.

[State]: I'll continue, Judge.

[Court]: You need—let's go ahead right now. Don't say what anyone told you or what you learned by someone telling it to you.

[Katrib]: Okay.

[Court]: Unless you're specifically asked and I rule on whether it's going to be hearsay or not.

[Katrib]: Sure.

[Court]: Thank you.

[State]: Who was the other person that you spoke with?

[Katrib]: I spoke to the three-year-old son.

[State]: Okay. Prior to speaking with the three-year-old son, did you ask permission from anyone?

[Katrib]: Yes, ma'am, I did. I asked the grandmother for permission.

[State]: Okay. Did you later then talk to the son?

[Katrib]: Yes, ma'am, I did.

[State]: *Okay. Now, did you determine through your investigation whether the child witnessed the offense?*

[Katrib]: Yes, ma'am, I did.

[Defense]: Excuse me. Objection. It's based on hearsay what the child said.

[Court]: Okay. Now so far you said, yes, you did determine whether or not he was. But anything further than that would be an answer based on hearsay. So, all we know so far is you determined one way or another whether or not he was a witness but not anything that's going to be based on hearsay.

[State]: Through your investigation that night, where did you determine the children were during the assault?

[Court]: I just want to make sure you're not-what your source is not being based on what someone told him. That's going to be hearsay.

[State]: No, Judge, this is not based on what the mother or the son told him.

[Court]: Well, you're going to have do—

[Defense]: Judge—

[Court]: Excuse me, Mr. Nugent. You need to be clear as to the source of information; from his own personal knowledge, what he witnessed, and not what's it based on. He can't be generally what he learned from—generally from his investigation. That's why it would be hearsay. Unless there's a hearsay exception, then we'll proceed then.

(emphasis added). After this instruction from the court, the State abandoned that line of questioning and moved on. After sustaining defense counsel's first objection as to what the mother told Officer Katrib, the State moved on to ask questions regarding whether appellant's son had witnessed the offense.

"Hearsay" is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. TEX.R. EVID. 801(d). "Statement" is defined as "(1) an oral or written verbal expression or (2) nonverbal conduct of a person, if it is intended by the person as a substitute for verbal expression." TEX.R. EVID. 801(a). Hearsay is not admissible evidence unless excepted by the rules of evidence, a statute, or a rule promulgated pursuant to statutory authority. TEX.R. EVID. 802; *Barnum v. State*, 7 S.W.3d 782, 789 (Tex. App.-Amarillo 1999, pet. ref'd).

 We find that Officer Katrib's answer to the State's question seeking to determine whether or not Katrib discovered, through his investigation, if appellant's son had witnessed the offense was not inadmissible backdoor hearsay evidence. Katrib's only response to the question indicated that he *had* discovered whether or not the child had witnessed the offense. Katrib's testimony did *not* reveal whether or not the child witnessed the offense. The State never asked the follow-up question of *what* Katrib had discovered through his investigation. The only question asked by the State was *whether or not*

he discovered if appellant's son had witnessed the offense, not *what* that investigation revealed. Therefore, no hearsay evidence was directly or indirectly admitted because *what* the appellant's son had revealed to Katrib was never introduced into evidence through the testimony of Katrib. *See Schaffer*, 721 S.W.2d 594, 597 (Tex.App.-Corpus Christi 1986), *affirmed*, 777 S.W.2d 111, 113 (explaining that it is "this form of question *and answer*" that presents the jury with information from unsworn, out-of-court sources that "should be called 'backdoor' hearsay and should be subject to the same rules and limitations as the more common form.") (emphasis added).

**Appellant's Mother's Testimony**

Later, the State, again conducted a similar line of questioning during the cross-examination of appellant's mother. Appellant complains of the following testimony:

[State]: Do you recall—the three-year-old son was out there as well; isn't that correct?

[Appellant's mother]: Out where?

[State]: In the car when this happened?

[Appellant's mother]: Yes.

[State]: Also, the three-year-old son was in the area when the officer was present, right?

[Appellant's mother]: Yes.

[State]: *Do you recall the three-year-old son acknowledging that he saw his dad and his mom—*

[Defense]: Excuse me, Judge. I'm going to object to their attempt to cross-examine the grandma about statements the three-year-old allegedly made.

[Court]: Response?

[State]: I'm asking her if she saw what the officer saw.

[Court]: Probably not the right objection, if there is one.

[Defense]: It's hearsay.

[Court]: Is it hearsay?

[State]: It's an excited utterance, Your Honor, and I'm asking if she knows or if she saw it.

[Court]: You probably have to lay the predicate for excited utterance as far as the three-year-old for it to be excited utterance. Any other response? Otherwise, it would be hearsay at this point.

[State]: Okay.

[State]: Ma'am, what was the emotional state of the son during all of this?

[Appellant's mother]: All this was terrifying and he was holding onto me.

[State]: Very emotional?

[Appellant's mother]: Yes. I love him so much.

[State]: *And do you recall the son acknowledging that he saw—*

[Defense]: Excuse me, Judge. I'm going to object to hearsay. The prosecution has subpoenaed the little boy three times. They subpoenaed him to be here yesterday. If they want to call a three-year-old, that's one thing, but to cross-examine grandma about statements that a three-year-old allegedly made, through hearsay, is improper and I object.

[Court]: Overruled.

[State]: And my response, also, would be, Your Honor, we're not going to call a three-year-old to the stand. The three-year-old has already been through enough.

(emphasis added). After defense counsel's last objection, the State dropped the line of questioning and moved on to another topic. Appellant's mother never answered the question of whether she recalled her grandson's acknowledging that he saw the offense being committed.

 Because there was never a response from appellant's mother to the

State's question regarding whether she recalled appellant's son's acknowledging that he had witnessed the offense, there is no statement of a witness as defined in Texas Rule of Evidence 801(a). *See* Tex.R. Evid. 801(a). Under the Texas Rules of Evidence, rule 801(a) provides that a "statement" is defined as "(1) an oral or written verbal expression or (2) nonverbal conduct of a person, if it is intended by the person as a substitute for verbal expression." Tex.R. Evid. 801(a). A "declarant" is "a person who makes a statement." Tex.R. Evid. 801(b). "Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex.R. Evid. 801(d). The witness on the stand, appellant's mother, *never* answered the question and, therefore, her testimony could not directly or indirectly prove that she had been told by appellant's son that he saw appellant commit the offense.

The Court of Criminal Appeals has stated that, even if an out-of-court statement itself is not introduced, the hearsay rule may apply if testimony allows the jury to ascertain the purport of the statement. *Schaffer v. State*, 777 S.W.2d 111, 114 (Tex. Crim.App.1989); *Gurka v. State*, 82 S.W.3d 416, 420 (Tex.App.-Austin 2002, pet. ref'd). As in *Schaffer v. State*, the State attempted to indirectly elicit hearsay testimony from appellant's mother when it asked her whether she recalled if appellant's son, her grandson, acknowledged that he saw appellant hit his mother. *See id.* (holding that witness' statement about not dropping charges against defendant was inadmissible hearsay because testimony indirectly proved that witness had been told that defendant was not an informer). Here, unlike in *Schaffer*, the State *abandoned* this line of questioning before the witness could introduce the hearsay testimony of appellant's son. *Schaffer* is not applicable to this case because the trial court did not improperly allow the State to introduce hearsay testimony before the jury.

Accordingly, we overrule appellant's fourth point of error.

## Prosecutorial Misconduct

In his fifth point of error, appellant contends that he was denied a fair trial. Specifically, appellant complains that the cumulative effect of improper actions on the part of the trial court and of the prosecutor created a coercive atmosphere, which operated to violate his rights to a fair trial and effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Every person accused of a crime is entitled to a fair trial. *See Bethany v. State*, 814 S.W.2d 455, 456 (Tex.App.-Houston [14th Dist.] 1991, writ ref'd); *see e.g., Henley v. State*, 576 S.W.2d 66, 69 (Tex.Crim.App.1978). As the Supreme Court and the Court of Criminal Appeals have noted, "the atmosphere essential to the preservation of a fair trial—the most fundamental of all freedoms-must be maintained at all costs." *Estes v. Texas*, 381 U.S. 532, 540, 85 S.Ct. 1628, 1632, 14 L.Ed.2d 543 (1965); *Taylor v. State*, 420 S.W.2d 601, 607 (Tex.Crim.App.1967). In this regard, it is the duty of both the trial court and the prosecutors to conduct themselves so as to ensure that an accused receives a fair trial. *Bethany*, 814 S.W.2d at 456; Tex.Code Crim. Proc. Ann. art. 2.03(b) (Vernon 1977). In addition, an accused is entitled to the assistance of an attorney who will play the critical role necessary in our adversarial system to ensure that the trial is fair. *See Strickland v. Washington*, 466 U.S. 668, 685–86, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984).

In an appeal of this nature, it is the fundamental purpose of an appellate court to ascertain whether or not the convicted defendant received a fair trial in the court below. *See Ex parte Adams*, 768 S.W.2d 281, 293 (Tex.Crim.App.1989); *Bethany*, 814 S.W.2d at 456. In making this determination, any indication of prejudice or opinion of guilt on the part of the trial judge requires close scrutiny of his actions. *See Zima v. State*, 553 S.W.2d 378, 380 (Tex.Crim.App.1977). Likewise, although the character of a prosecutor does not necessarily dictate the fairness of a trial, the conduct and discretion of the prosecutors in this case will be necessarily involved in our analysis. *See Ex parte Adams*, 768 S.W.2d at 293.

In support of this point of error, appellant delineates seven instances of judicial and prosecutorial misconduct, which he contends resulted in the deprivation of his constitutional rights. Appellant reiterates the alleged errors outlined in his first four points of error [4] and includes two other alleged errors by the State, as well as a failure by the trial court to rule on a defense objection.[5]

The proper method of preserving error in cases of prosecutorial misconduct is to (1) object on specific grounds, (2) request an instruction that the jury disregard the comment, and (3) move for a mistrial. *Penry v. State*, 903 S.W.2d 715, 764 (Tex.Crim.App.1995); *Cook v. State*, 858 S.W.2d 467, 473 (Tex.Crim.App.1993). Appellant made no objection on the basis of prosecutorial misconduct in the trial court to the previously addressed alleged errors or the newly alleged errors. By failing to object on this theory at trial, appellant has preserved nothing for our review. *See Perkins v. State*, 902 S.W.2d 88, 96 (Tex.App.-El Paso 1995, writ ref'd).

Although appellant alleges that he was denied assistance of counsel at trial, he does not cite any specific instances of what trial counsel did that contributed to the allegedly coercive atmosphere created by the "cumulative effect of judicial and prosecutorial misconduct during the trial." This Court is not required to sift through the record in search of support for appellant's broad assertions of error. *See* Tex. R.App. P. 38.1(h); *Lawton v. State*, 913 S.W.2d 542, 554 (Tex.Crim.App.1995).

Appellant offers no argument, authority, or citation to the record to explain how his representation fell below the standard of prevailing professional norms by his trial counsel's failure to object to the instances of judicial and prosecutorial misconduct alleged in this point of error. With respect to the references to appellant's first four points of error, we have found no misconduct on the part of the trial court; and appellant has cited no authority from which we could conclude that appellant's trial counsel's conduct fell below a professional standard because his counsel failed

---

4. In his first four points of error, appellant contends that (1) the trial court undermined appellant's presumption of innocence, thereby denying his right to a fair trial and effective assistance of counsel at trial; (2) the trial court erred in allowing the State to identify an exhibit as a "booking photo"; (3) the trial court erred in admitting evidence that was of little or no probative value and unfairly prejudicial; and (4) the trial court erred in permitting the State's repeated use of inadmissible "backdoor" hearsay evidence.

5. Aside from the four points of error, the additional errors of prosecutorial misconduct appellant alleges are (1) a reference outside-the-record by the State regarding Rana's passport during closing argument; (2) the State advising the court about an alleged extraneous offense during the punishment phase, which appellant had never been notified of despite filing a prior request for notice of extraneous offenses; and (3) the trial court's failure to make a ruling on an objection by appellant during closing argument.

to object to those alleged instances of prosecutorial misconduct.

An appellant bears the burden of proving by a preponderance of the evidence that his counsel was ineffective. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999). We cannot speculate beyond the record provided; rather, a reviewing court must presume that the actions were taken as part of a strategic plan for representing the client. *Young v. State,* 991 S.W.2d 835, 837–38 (Tex.Crim. App.1999). The appellant must overcome the presumption that his trial counsel's strategy was sound and affirmatively demonstrate the alleged ineffective assistance of counsel. *Rylander v. State,* 101 S.W.3d 107, 110 (Tex.Crim.App.2003); *Thompson,* 9 S.W.3d at 813–14. Appellant has failed to carry his burden of proof.

We overrule appellant's fifth point of error.

### CONCLUSION

We affirm the judgment of the trial court.