In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-07-528 CR


____________________



VICTOR FRANK ROSSER, II, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 253rd District Court


Liberty County, Texas


Trial Cause No. CR26531






MEMORANDUM OPINION


 A jury found Victor Frank Rosser, II guilty of murder and assessed a sentence of
ninety-nine years and a $10,000 fine. Rosser's first issue challenges the factual sufficiency
of the evidence supporting the jury's verdict that impliedly rejected his claim of self-defense. 
Rosser's second issue complains that the trial court erred by admitting into evidence a
photograph of his tattooed back. We affirm the judgment.

 Rosser contends that the evidence is factually insufficient to establish that he did not
act in self-defense. In a factual sufficiency review, we consider all of the evidence in a
neutral light and determine whether the evidence supporting the verdict is so weak that the
verdict is clearly wrong and manifestly unjust or whether the verdict is against the great
weight and preponderance of the conflicting evidence. Watson v. State, 204 S.W.3d 404,
414-15 (Tex. Crim. App. 2006). We ask whether "[c]onsidering all of the evidence in a
neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" Id.
at 415. In reviewing the factual sufficiency of the jury's rejection of a self-defense issue, we
review all of the evidence in a neutral light and ask "whether the State's evidence taken alone
is too weak to support the finding and whether the proof of guilt, although adequate if taken
alone, is against the great weight and preponderance of the evidence." Zuliani v. State, 97
S.W.3d 589, 595 (Tex. Crim. App. 2003).

 Rosser argues the overwhelming weight of the evidence shows he reasonably believed
the use of deadly force was immediately necessary to prevent the use or attempted use of
unlawful deadly force by the deceased, Brian Blackshear. See Tex. Pen. Code Ann. § 9.32
(Vernon Supp. 2007). Once the defendant raises the issue of self-defense, the State has the
burden of persuasion to disprove the raised defense. Zuliani, 97 S.W.3d at 595.

 Rosser's mother, Marilyn, Marilyn's housemate Herman, Herman's daughter
Kimberly, and Kimberly's boyfriend Brian attended a crawfish boil, then spent several hours
drinking and relaxing at Marilyn's house. Rosser, his girlfriend Kelly, Kelly's young child,
and Rosser's pit bull arrived at Marilyn's, and Rosser took the dog to the computer room in
the back. Kimberly, who behaved flirtatiously when intoxicated, joined Rosser in the
computer room. Brian reacted in a negative manner, and according to Rosser, Rosser told
Brian that "this is grown-up business and he can step out of the room." Brian did not display
any weapons or threaten Rosser.

 Rosser gave a detailed account of the escalation from encounter to violence and
homicide. According to Rosser, his highly-trained pit bull jumped up and bounced off of
Brian in the same way that a person would walk up and shove someone to "check them." 
The dog snapped at Brian and growled, but did not bite. Rosser claimed he told the dog to
go to the door and sit and stay, and the dog complied. Brian indicated that he believed
Rosser had sicced the dog on him, and Rosser ordered Brian to leave. Brian grabbed the dog
by both sides of the collar and picked up the dog to eye level, shaking and choking her,
perhaps for two minutes. Rosser stood up, poked Brian on the cheek and told him not to
handle the dog like that. Brian loosened his grip, and the dog and the collar hit the ground. 
The dog started snarling and snapping and was "standing ground" between the two men. 
Brian punched Rosser four to eight times on the mouth. Rosser claimed he sustained a split
lip and two chipped teeth, and that his back fell against a pencil sharpener. Brian pulled
Rosser's t-shirt over his head, obscuring his vision. Rosser reached for a pocketknife that
he kept clipped inside his pocket, and stabbed Brian in the side at least three times. Rosser
said, "All I know is I'm in fear for my life." Marilyn entered the room and started hitting
Brian in the face with the dog's collar while screaming for him to leave. Brian retreated out
the door and onto the porch. Rosser claimed Brian would take two steps forward and one
back, like a two-step dance. Rosser retrieved his gun from his backpack. Brian had the door
open and made a motion like he was coming back into the house. Without speaking, Rosser
aimed for Brian's torso and fired the gun one time from perhaps two-and-one-half feet away.

 A pathologist described the victim's wounds. A cutting wound began on the left
cheek, below the left eyelid, and extended along the left cheek to the ear. Another cut went
through the top of the left ear and cut the cartilage. A cutting wound appeared above the
right eyebrow and lower forehead area. Stippling on the right forearm measured six by three
inches above the gunshot entrance wound. The stippling indicated the gun was fired from
a distance of fifteen to twenty-four inches. The lack of stippling above the wound was
consistent with Brian's arm covering that area. There was no stippling on the inside of the
forearm. There was a cluster of four knife stab wounds in the left lower chest. Three of the
wounds had the sharp edge pointed back toward the center of the body. The fourth wound
was inflicted from a different position around the victim. There was a superficial stab wound
on the upper to mid back. One of the stab wounds punctured the spleen. The bullet entered
the chest twenty inches below the top of the head, six inches to the right of the midline, and
traveled right to left, slightly downward and front to back, diagonally through the body. The
bullet rested at the left lower back, twenty-two-and-one-half inches below the top of the
head, nine and one-fourth inches to the left of the midline. The path of the bullet was not
consistent with the shooter standing face-to-face with the victim, as the victim was positioned
sideways in relation to the muzzle of the gun. The stippling was consistent with the victim
standing to the side of the shooter with his arm covering his chest. The physical findings
were not consistent with Brian having his hand on the screen door.

 Rosser argues the jury "completely ignored" testimony from Rosser and his mother
concerning Brian's emotional state and the violence inflicted on Rosser by Brian while they
were in the computer room. Rosser also argues that the jury ignored Marilyn's testimony that
Brian was attempting to re-enter her home when Rosser shot Brian. Because the jury is in
the best position to evaluate the credibility of the witnesses, our factual-sufficiency
jurisprudence requires the appellate court to afford due deference to the jury's
determinations. Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006), cert.
denied, 76 U.S.L.W. 3158, 128 S.Ct. 87, 169 L.Ed.2d 66 (2007). The jury could rationally
reject the testimony of Rosser and his mother for lack of credibility for a number of reasons. 
For instance, Rosser fled the scene, indicating guilty knowledge. Marilyn told him to leave,
indicating an awareness of his guilt. When Kimberly called 911, requested the assistance of
the police and an ambulance, and stated that Rosser had shot Brian, Marilyn took the
telephone, stated that only an ambulance would be needed, then lied about who shot Brian.

 The following day, Marilyn and Herman secretly met Rosser and gave him money. 
Upon his apprehension and arrest four days after the killing, Rosser had the casing from the
fatal bullet with him; he then lied before the grand jury and claimed the casing was not the
one from Brian's shooting. Rosser also lied to the arresting detective about the dog having
died, when in fact Rosser had taken the dog to a friend's home. Rosser's claim that Brian
beat him on the face was inconsistent with Rosser's physical condition upon his arrest four
days later. Finally, Rosser's claim that Brian had his hand on the screen door did not match
the physical evidence, which indicated Brian was holding his wounded side when Rosser
shot him.

 Furthermore, the jury could rationally reject Rosser's assertion that the use of deadly
force was justified. The use of deadly force is justified only when immediately necessary to
prevent the use or attempted use of unlawful deadly force. See Tex. Pen. Code Ann. § 9.32. 
Brian was certainly intoxicated and likely was enraged, but he was unarmed, had been
attacked by a pit bull, stabbed repeatedly, and beaten with a dog collar. The jury was free
to conclude that, at that point, Brian was not likely to use deadly force.

 Viewing all the evidence probative of self-defense, the jury's rejection of Rosser's
defense was not so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust. Accordingly, we find the evidence factually sufficient to support the
verdict of guilt. We overrule issue one.

 In his second issue, Rosser contends the trial court erred by admitting two photographs
of Rosser's back. The first photograph reveals a graphic pattern tattooed across his shoulders
and upper back. The second photograph is a close-up of Rosser's lower back, and depicts
some redness but no bruising, cuts, or abrasions. Rosser claimed that Brian pushed him
against a pencil sharpener; the photograph depicted the condition of Rosser's back at the time
of his arrest. The State offered the evidence because Rosser claimed to have injured his back
in a fistfight with Brian before the stabbing and shooting occurred. Rosser argues that only
the part of the photographs that depict the red area are relevant and that the photographs are
unfairly prejudicial. See Tex. R. Evid. 403.

 Evidence is relevant if it tends to make the existence of any fact that is of consequence
to the determination of the action more probable or less probable than it would be without
the evidence. Tex. R. Evid. 401. A photograph of the defendant that is probative of a claim
of self-defense is admissible unless it has the potential to impress the jury in some irrational
but indelible way. See Hajjar v. State, 176 S.W.3d 554, 561 (Tex. App.--Houston [1st Dist.]
2004, pet. ref'd). Rosser claimed he injured his back when Brian attacked him, so the
presence in the photographs of no more than a superficial injury four days after the
altercation helped make a fact of consequence--whether Brian injured Rosser in a vicious
attack shortly before Rosser shot Brian--more or less probable than it would be without the
photographs. See Tex. R. Evid. 401. On appeal, Rosser suggests we cannot know how the
presence of a tattoo might affect the mind of a juror assessing the tattooed person's
credibility. The trial court considered this argument, and remarked that "there's no testimony
that there's any significance to this particular tattoo" and, noting that "nowadays tons of
people have tattoos," reasoned that cropping the photograph would "start losing perspective
about the size of the wound or bruise or whatever." The trial court ruled that the probative
value of the photographs was not outweighed by their prejudicial effect. We hold that ruling
was within the zone of reasonable disagreement; therefore, the trial court did not err by
admitting the photographs. We overrule issue two and affirm the judgment.

 AFFIRMED.



 ______________________________

 STEVE McKEITHEN

 Chief Justice



Submitted on July 2, 2008

Opinion Delivered July 16, 2008

Do Not Publish


Before McKeithen, C.J., Kreger and Horton, JJ.