Opinion issued July 8, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00194-CR

———————————

Gregory Smith, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 351st District Court

Harris County, Texas



Trial Court Case No. 1188927

 



 

MEMORANDUM OPINION

A jury
convicted appellant, Gregory Smith, of aggravated robbery.[1]  The jury assessed punishment at 35 years’
imprisonment.  In two issues, appellant
argues that the trial court erred (1) in overruling his objection to the
admission of videotaped evidence and (2) in overruling his objection to the prosecutor’s
characterization of him.

We affirm.

BACKGROUND

          On
March 6, 2008, appellant entered the EZ Money Loan store on I-10 and Lockwood
in Houston, Texas.  He entered the store
alone and spoke with Brenda Hernandez, an employee of the store.  Appellant asked Hernandez about the
requirements for a loan and left shortly thereafter.  One to two minutes after appellant left the
store, two African-American men dressed in black entered.  They asked Hernandez about the requirements
for a loan and then pointed guns at her and demanded that she give them the
money from her cash drawer.  The cash
drawer contained a dye pack that would explode if taken out of the store.  The two men took the money but left the dye
pack.  They then ordered Hernandez to
open the safe.  A ten minute time delay protected
the store’s safe, so, after Hernandez entered the code, she and the two men had
to wait for ten minutes for the safe to open. 
As they waited, one of the men made a cell phone call and indicated to
the person on the other end of the line how long they would be in the
store.  

During the robbery, Hernandez’s
boss, Aida Duenas Garcia, was in the surrounding neighborhood distributing
advertisements for the store with her son, James Hart.  While she was out, she attempted to call
Hernandez several times on her cell phone, but Hernandez did not answer.  Garcia considered it unusual for Hernandez
not to answer her cell phone, and she began to drive back to her store.  While she was driving back, she called the EZ
Pawn, located next door to her store, and asked them to use their surveillance
cameras to determine whether there was a problem in the EZ Money store.  As she approached her store, Garcia saw
appellant sitting in a car and two men dressed in black inside the store.
Garcia and her son watched the robbery taking place on the surveillance camera
in the EZ Pawn store, and Garcia called the police.  After the safe opened, the men took the money
and ran out of the store.

          Sergeant
F. Ortiz of the Houston Police Department (HPD) responded to Garcia’s emergency
call.  As he approached the store, he saw
two men armed with pistols, one of whom was wearing a red hat, exit.  He identified himself as a police officer and
ordered the two men to lie on the ground. 
The men ran, and Sergeant Ortiz returned to his police cruiser to follow
them.  As he approached them in his
cruiser, the men climbed into a gray Toyota, driven by appellant.   Appellant drove away quickly, and Sergeant
Ortiz, with his sirens on, followed.    Appellant
drove as fast as 80 miles per hour and traveled through several intersections
without stopping.  Appellant eventually lost
control of the Toyota, and it crashed. 
Appellant and the two other men exited the vehicle and began to run. With
the assistance of other police officers and a police helicopter, all three men
were arrested.  The police officers
brought Hernandez, Garcia, and Hart to the location where they held the
suspects, and Hernandez and Garcia identified them as the robbers.  The State obtained an indictment against
appellant for the armed robbery of Brenda Hernandez.    

          At
trial, the State called nine witnesses, and appellant testified in his own defense.  As its first witness, the State called
Richard Selser, the regional loss prevention investigator for EZ Corporation.[2]  He testified that this store was in his
region, that each EZ Money store has a surveillance camera in it, and that the
camera’s digital recordings are kept on a computer in each store for 60
days.   Selser testified that he was the
custodian of the video surveillance recordings made at the stores in his
district.  He testified that he arrived
at the scene of the robbery about twenty minutes after it occurred.  After arriving at the store, he went to the
computer that held the surveillance video for the store and burned several
copies of the video onto individual compact disks.  He gave one of these compact disks to a police
officer, but he testified that he could not remember the name of that
officer.  He testified that the compact
disk offered as State’s Exhibit 2 was the disk that he had given to the police
and that it did not appear to have been altered in any way.  Over defense counsel’s objection, the court
admitted the compact disk as State’s Exhibit 2.

The State then called Garcia.  She testified that when the robbery occurred,
she was not in the store but was in the surrounding neighborhood distributing advertisements
for the store.  She called Hernandez’s
cell phone to see if she wanted something to drink, but Hernandez did not
answer.  Garcia testified that it was
unusual for Hernandez not to answer her cell phone and that this prompted her
to call the EZ Pawn store, located next to the EZ Money store, and have the
manager of the EZ Pawn use his surveillance camera to see if there was a
problem in the EZ Money store.  As she
approached her store, she could see two African-American men, dressed all in black,
inside.  As she got closer, she also saw
a car with its flashers on parked near her store.  She did not remember the color of the car,
but she remembered that appellant was sitting in the driver’s seat and that he
looked worried.  She testified that she
was within ten or fifteen feet of appellant. 
She and her son entered the EZ Pawn store and watched on its
surveillance camera as two men robbed Hernandez.  She saw the two men flee and a police officer
pursue them.  She then entered her store
to check on Hernandez.  The police
arrived and took her and her son, James Hart, to identify the suspects.   

          The
State then called Hart.  He testified that,
as he and his mother approached the EZ Money store, he noticed a Toyota Camry
parked behind the store with its flashers on and recorded its license plate
number.  Appellant was in the driver’s
seat of the Camry and was watching the corner of the EZ Money store.  He and his mother entered the EZ Pawn, and he
saw two men run from the EZ Money store. 
He gave the license plate number to the police department.    

          After
the State rested, appellant testified in his own defense.  He testified that on the day of the robbery
he went to the Mobil station near the EZ Pawn and EZ Money stores to return a
car he had borrowed.  He intended to meet
his grandson, Desmond Eugene, and while he waited for his grandson he went into
the EZ Money store and asked about the requirements for getting a loan.  He testified that he forgot to take the loan
application with him as he was leaving, but the clerk reminded him to take it
with him.[3]  As he left the store, he saw his grandson with
a friend, Derek Thomas.  His grandson
told him that they were going into the EZ Pawn store to inquire about wheels
for a car.  Appellant testified that he
went to his car, turned it around, and waited for his grandson and Thomas.

Appellant testified that he waited
fifteen to twenty minutes before Eugene and Thomas came back to the car and
that he did not see any weapons when they got into the car.  He then drove off.  After he had driven “half-way down the
street,” a police car pulled behind him and turned its sirens on.  Appellant admitted that he attempted to evade
the police car and that, in doing so, he drove fast and ran stop signs.  He testified that his reason for fleeing was
that “he panicked” because he did not want to go back to jail.  He admitted to many prior convictions and to
providing the police with aliases to avoid the consequences of unspecified
tickets.  He further testified that after
he lost control of the car, he and the other two men ran from the police.  He testified that he did not know that the
other two men were going to commit a robbery. 
He did not see any of the guns or money that were recovered from the
Toyota until after the car was wrecked.[4]    

          On
cross-examination, the prosecutor asked appellant what his occupation was, and
then the following exchange occurred:

Prosecutor:           When
you’re not doing that sort of work, you steal?

 

Defense:
               Objection
to the relevance.

 

Appellant:            I work.

 

Trial
Court:          Overruled.

 

          . . . 

 

Prosecutor:           In order to steal, you have to lie,
don’t you?

 

Appellant:            That’s past tense what I’ve done,
though, Miss.

 

Prosecutor:           In order to steal, you have to lie,
right?

 

Defense:                Judge,
once again, it’s argumentative.

 

Trial
Court:          Overruled. Answer the
question.

 

Appellant:            Yes, ma’am.

 

Prosecutor:           All right. So, is it fair to say
those certain times you’ve been convicted you’re also a liar?

 

Appellant:
           I’m not a liar.

 

Prosecutor:           Well, you steal, don’t you?

 

Appellant:            I’ve stole before.

 

Prosecutor:           But when you steal, you have to lie
to do it, right?

 

Appellant:
           Yes, ma’am.

 

.
. . 

 

Prosecutor:           Okay. So, all the jury has to go on
is the word of you, who is a convicted liar, that that was actually going on,
right?

 

Defense:               I’m going to object to the way
that question is phrased.  He’s never
been convicted of lying judge.

 

Trial
Court:          Sustained.

 

Prosecutor:           All they have to go on is your word,
right, Mr. Smith?

 

Appellant:            Yes, ma’am.

 

          The
jury convicted appellant and assessed his punishment at 35 years’ imprisonment.


 

ANALYSIS

          In his
first issue, appellant contends that the trial court erred in admitting
videotaped evidence because the State had not established a proper predicate
for its admission.

A.              
Standard of Review

We review the admission of evidence
by the trial court for abuse of discretion. 
McDonald v. State, 179 S.W.3d
571, 576 (Tex. Crim. App. 2005).  So long
as the trial court’s decision is within the zone of reasonable disagreement, we
will not disturb it on appeal. Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g).

B.              
Analysis

Rule of Evidence 901
provides that evidence must be authenticated before it may be admitted.  Tex.
R. Evid. 901.  The requirement for
authentication “is satisfied by evidence sufficient to support a finding that
the matter in question is what its proponent claims.”  Id.
901(a).  The rule provides examples “of
authentication or identification conforming with the requirements of this
rule.” Tex. R. Evid. 901(b). The
example relevant to this case is, “Testimony of witness with knowledge.
Testimony that a matter is what it is claimed to be.”  Id.  901(b)(1); see Thiery v. State, 288 S.W.3d
80, 88–90
(Tex. App.—Houston [1st Dist.] 2009, pet. ref’d); Page v. State, 125 S.W.3d 640, 648–49 (Tex. App.—Houston [1st Dist.]
2003, pet. ref’d).  Generally, proof of the beginning and end of
the chain of custody will support admission of the evidence barring any showing
of tampering or alteration. See Stoker v. State, 788 S.W.2d 1, 10 (Tex.
Crim. App. 1989).  

          Appellant argues that Selser
could not authenticate the recording because, while he was the loss prevention
officer, he was not present during the robbery, he did not maintain the
recording equipment, and he testified that he had not seen the videotape since
he gave it to the police.  However,
Selser testified, among other things, that he was the custodian of the
surveillance tapes that are generated in the stores he supervises, that he
arrived at the store approximately twenty minutes after the robbery, that he personally
made several copies of the recording of the robbery, that he gave one copy to an
unidentified police officer, and that the compact disk admitted as State’s
Exhibit 2 was one of the disks that he burned for the police on the day of the
robbery.  There was no showing of
tampering or alteration.  See Stoker, 788 S.W.2d at 10.  Thus, Selser was a witness with personal
knowledge that the disk was what the State claimed it to be.  See
Tex. R. Evid. 901.  Therefore, we conclude that the trial court
did not abuse its discretion in admitting the recording of the robbery based on
Selser’s authentication.  See McDonald, 179 S.W.3d at 576; Thiery, 288
S.W.3d at 88–90; Page 125 S.W.3d at 648–49.

          We overrule appellant’s first issue.

PROSECUTORIAL MISCONDUCT

In his second issue, appellant
contends that the prosecutor’s characterization of him as a liar constituted
prosecutorial misconduct.

A.              
Standard of Review

An objection stating one legal
theory may not be used to support a different legal theory on appeal.  Broxton
v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995).  Prosecutorial misconduct is an independent
basis for objection that must be specifically urged in order for error to be
preserved. Hajjar v. State, 176
S.W.3d 554, 566 (Tex. App.—Houston [1st Dist.] 2004, pet. ref’d); see also Hernandez v. State, 914 S.W.2d
218, 225 (Tex. App.—El Paso 1996, pet. ref’d) (defendant must object that
prosecutor’s question was clearly calculated to inflame minds of jury and was
of such character so as to suggest impossibility of withdrawing  impression produced) (citing Huffman v. State, 746 S.W.2d 212, 218
(Tex. Crim. App. 1988)).  The proper
method of preserving error resulting from prosecutorial misconduct is to (1)
object on specific grounds, (2) request an instruction for the jury to
disregard the evidence or argument, and (3) move for mistrial. Penry v. State, 903 S.W.2d 715, 764
(Tex. Crim. App. 1995); Hajjar, 176
S.W.3d at 566.

B.              
Analysis

Here, appellant’s counsel objected
to the prosecutor’s aggressive cross-examination on the basis that it was
argumentative and irrelevant, but his objections gave the trial court no
indication that he believed the prosecutor’s conduct was clearly calculated to
inflame the minds of the jury and was of such a character that it could not be
cured by an instruction to disregard. See
Hernandez, 914 S.W.2d 225.  Nor did
he request an instruction for the jury to disregard the statements and request
a mistrial.  See Hajjar, 176 S.W.3d at 566. 
Thus his objection at trial did not comport with his argument on appeal,
and his failure to request a jury instruction or a mistrial means that
appellant has not preserved this for appellate review.  See id.;
see also Broxton, 909 S.W.2d at
918.  Therefore, we conclude that
appellant waived his complaint. 

We overrule his second issue.

CONCLUSION

          We affirm the judgment of
the trial court.

 

 

 

 

 

 

Evelyn
V. Keyes

                                                                   Justice

 

Panel
consists of Justices Keyes, Hanks, and Higley.

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]
              See Tex. Penal Code Ann. § 29.03 (Vernon 2003) (providing elements for
aggravated robbery).





[2]
              EZ
Money is a subsidiary of EZ Corporation, which also includes EZ Pawn.





[3]
              The
police recovered a loan application from his car.





[4]
              Appellant also called Thomas and Eugene as
witnesses, but they invoked their Fifth Amendment right not to incriminate
themselves and were excused from testifying.