

# NUMBER 13-12-00606-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

SANTOS JOEL FLORES JR.,                                    Appellant,

v.

THE STATE OF TEXAS,                                       Appellee.

**On appeal from the 389th District Court
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Longoria
Memorandum Opinion by Justice Rodriguez**

Appellant Santos Joel Flores Jr. was indicted on August 9, 2011 in seven counts

as follows:   Count 1, continuous sexual abuse of a child, *see* TEX. PENAL CODE ANN. §

21.02 (West, Westlaw through 2013 3d C.S.); Counts 2 and 5, sexual assault of a child,

*see id.* § 22.011(a)(2) & (c)(1) (West, Westlaw through 2013 3d C.S.); and Counts 3, 4, 6, and 7, indecency with a child by contact. *See id.* § 21.11(a) (West, Westlaw through 2013 3d C.S.). A jury found Flores guilty of: Count 1 and sentenced him to forty years imprisonment in the Institutional Division of the Texas Department of Criminal Justice (ID–TDCJ); Counts 2 and 5 and sentenced him to ten years in the ID–TDCJ for each count; and Counts 3, 4, 6, and 7 and sentenced him to two years in the ID–TDCJ for each count. The trial court ordered the sentences to run concurrently.

As to Count 1, Flores contends by his first two issues that: (1) applying *Malik v. State* to affirm the judgment of conviction for the offense of continuous sexual abuse of a child would violate due process, *see* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc); and (2) the trial court committed egregious harm when a charge error altered the statutory time limits of section 21.02 of the penal code. *See* TEX. PENAL CODE ANN. § 21.02(b). As to all counts, Flores complains by his third and fourth issues that: (1) his Sixth Amendment rights were violated when the State invaded the province of the jury to determine the credibility of witnesses; and (2) trial counsel was ineffective when he failed to object to the State's questions regarding the credibility of witnesses. Finally, Flores asserts by his fifth issue that the judgments in Counts 2 through 7 violate the Double Jeopardy Clause of the Fifth Amendment because those counts are lesser-included offenses of Count 1. *See* U.S. CONST. amend. V. We affirm.

## I. JURY CHARGE ERROR

In his first issue, Flores contends that our review of his conviction for the continuous sexual abuse of a child (Count 1) under *Malik* would violate his federal due

process rights because United States Supreme Court precedent mandates that the jury, not the appeals court, must make fact findings on all essential elements of the charged offense. He argues that because the trial court did not submit the issue of the child's age—a necessary element to the offense of continuous sexual abuse of a child—to the jury, the jury was unable to convict him on that offense beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. § 21.02. By his second issue, Flores asserts that, as to Count 1, error resulted when the charge altered the limits of section 21.02 of the penal code and resulted in egregious harm.

The State responds arguing that while Flores appears to be alleging that the evidence is not sufficient and that any review using a hypothetically correct jury charge is improper, he does not make an actual claim that the evidence is insufficient. Because there is no sufficiency challenge, the State claims that Flores's challenge of *Malik* is either premature or moot. The State also reminds this Court that as an intermediate court we do not have the authority to provide the relief sought, i.e., overrule *Malik.*

## A. The Constitutional Issue

We agree that even if we were to construe Flores's argument as a challenge to the constitutionality of *Malik*, as an intermediate court we are bound to follow the decisions of the court of criminal appeals and have no authority to change the current standard of review. *See Wiley v. State*, 112 S.W.3d 173, 175–76 (Tex. App.—Fort Worth 2003, pet. ref'd); *see also Cedillo v. State*, No. 13-03-00689-CR, 2006 WL 1791580, at *1 (Tex. App.—Corpus Christi June 29, 2006, pet. ref'd) (mem. op., not

3

designated for publication). Also, because this Court has previously considered this argument and rejected it and because Flores's first two issues are premised on jury charge error, we will, as we did in *Cedillo v. State*, address them together under *Almanza v. State* and its progeny. *See* 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (en banc) (op. on reh'g); *see also Cedillo v. State*, No. 13-03-00689-CR, 2006 WL 1791580, at *1 (Tex. App.—Corpus Christi June 29, 2006, pet. ref'd) (mem. op., not designated for publication) (concluding that appellant's due process argument did not implicate the issue of sufficiency of the evidence under *Malik*, but instead constituted a jury charge error). Finally, we will reach the constitutional issues only if the case may not be decided on any other ground. *See Pena v. State*, 191 S.W.3d 133, 136–38 (Tex. Crim. App. 2006) (discussing need to avoid "adjudication of constitutional issues when at all possible"); *see also Valero Refining—Tex. L.P. v. State*, 203 S.W.3d 556, 563 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (rejecting constitutional challenge based on "hypothetical analysis" and noting appellant did not bring forth sufficient record to show the facts surrounding his conduct to support a constitutional violation). Because we decide this issue on whether there was charge error and whether error, if any, was egregious, we do not reach the constitutional issue.

**B. Standard of Review and Applicable Law**

In analyzing a jury charge issue, our initial inquiry is whether error exists in the charge submitted to the jury. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc); *Almanza*, 686 S.W.2d at 171. If we find error, the degree of harm necessary for reversal depends on whether the appellant preserved the error by

4

objection.  *Ngo*, 175 S.W.3d at 743.  If the defendant properly objected to the erroneous jury charge, reversal is required if we find "some harm" to the defendant's rights.  *Id.* (citing *Almanza*, 686 S.W.2d at 171).  If no objection was made, as in this case, we may only reverse if the record shows egregious harm.  *Id.* at 743–44.

"Errors that result in egregious harm are those that affect 'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Cueva v. State*, 339 S.W.3d 839, 858–59 (Tex. App.—Corpus Christi 2011, pet. ref'd) (quoting *Ngo*, 175 S.W.3d at 750); *see Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007).  When conducting an egregious harm analysis the reviewing court examines the record as a whole, including (1) the remainder of the charge; (2) the evidence, including contested issues and the weight of the probative evidence; and (3) the arguments of counsel.  *Stuhler*, 218 S.W.3d at 719.

A person commits the offense of continuous sexual abuse of a young child if, during a period of thirty or more days, the person commits two or more acts of sexual abuse.  *See* TEX. PENAL CODE ANN. § 21.02(b)(1).  At the time of each act of sexual abuse, the actor must be seventeen years of age or older, and the victim must be younger than fourteen.  *Id.* § 21.02(b)(2).  An "act of sexual abuse" is an act that violates one or more specified penal laws, among them indecency with a child by contact, aggravated sexual assault of a child, sexual assault of a child, and sexual performance by a child.  *Id.* § 21.02(c).

"Section 21.02 . . . became effective September 1, 2007, and it does not apply to an offense committed before that date."  *Martin v. State*, 335 S.W.3d 867, 873 (Tex.

5

App.—Austin 2011, pet ref'd) (citing Act of May 18, 2007, 80th Leg., R.S., ch. 593, §§ 1.17, 4.01(a), 2007 Tex. Gen. Laws 1120, 1127, 1148). "An offense is committed before the effective date of the statute if any element of the offense occurs before that date." *Id.* Finally, "[i]t is a longstanding rule that the State is not required to prove that an offense was committed on the date alleged in the indictment (whether or not the words 'on or about' are used) but may prove that the offense was committed on any date prior to the return of the indictment and within the period of limitations." *Id.* (citing *Klein v. State*, 273 S.W.3d 297, 304 n.5 (Tex. Crim. App. 2008)).

**C. Background**[1]

In this case, Count 1 of the indictment charged appellant with continuous sexual abuse of a child. *See* TEX. PENAL CODE ANN. § 21.02. The indictment reflected the limits of section 21.02 in this case, alleging that the period of abuse occurred "on or about the 1st day of September 2007 [the effective date of the statute] through on or about the 30th day of July A.D., 2009 [the complainant's fourteenth birthday]." Mirroring the indictment, the application paragraph of the Count 1 jury charge, Paragraph 5, set out the following:

> Now if you find from the evidence beyond a reasonable doubt that on or about SEPTEMBER 1, 2007 through on or about JULY 30, 2009, in Hidalgo County, Texas, the Defendant, SANTOS JOEL FLORES, JR., during a period that was 30 days or more in duration, committed two or more acts of sexual abuse against [J.F.[2]], said acts of sexual abuse

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

[2] To protect the child's privacy, we refer to the child by her initials. *See* TEX. R. APP. P. 9.8; *see also* TEX. CODE CRIM. PROC. ANN. art. 57.02(h) (West, Westlaw through 2013 3d C.S.).

having been violations of one or more of the following penal laws, including: aggravated sexual assault of a child by intentionally or knowingly causing the penetration of the sexual organ of [J.F.] by defendant's sexual organ, sexual assault of a child by intentionally or knowingly causing the sexual organ of [J.F.] to contact the mouth of the defendant, indecency with a child by contact by [sic], with intent to arouse or gratify the sexual desire of the defendant, engage in sexual contact with [J.F.], by touching part of the genitals of [J.F.], indecency with a child by contact by [sic], with intent to arouse or gratify the sexual desire of the defendant, engage in sexual contact with [J.F.], by causing [J.F.] to touch the sexual organ of the defendant, and each of the aforementioned acts of sexual abuse were committed on more than one occasion, and at the time of the commission of each of the acts of sexual abuse, the defendant was 17 years of age or older and [J.F.] was a child younger than 14 years of age, then you will find the defendant guilty of the offense of [c]ontinuous [s]exual [a]buse of a [c]hild as charged in the indictment.

Paragraph 6, the instruction paragraph, provided the following:

You are instructed that the allegation that the offense was committed on or about SEPTEMBER 1, 2007 through on or about JULY 30, 2009, does not bind the State to any one particular date but may include any day prior to AUGUST 9, 2011, the day the indictment was filed. There is no statute of limitations for [c]ontinuous [s]exual [a]buse of a [c]hild.

Flores did not object to the Count 1 charge.

**D. Discussion**

Flores asserts that the trial court submitted a fundamentally flawed jury charge. Specifically, he contends that the language in the instruction that sets out the jury "may include any day prior to August 9, 2011, the day the indictment was filed" altered the statutory requirements of section 21.02. He claims that this language allowed for the consideration of incidences that occurred prior to September 1, 2007, the effective date of the statute, and incidences that occurred after July 31, 2009, when J.F. turned

7

fourteen.[3]

## 1. Fourteenth-Birthday Challenge

Regarding events that took place after J.F.'s fourteenth birthday, the charge set out, in relevant part, that a person commits continuous sexual abuse of a child if "at the time of the commission of each of the acts of sexual abuse . . . the victim is a child younger than 14 years of age." The application paragraph for Count 1 required the jury to find that "at the time of the commission of each of the acts of sexual abuse . . . [J.F.] was a child younger than 14 years of age." The jury also knew from the evidence that J.F. was born on July 31, 1995 and turned fourteen on July 31, 2009.

At trial J.F. testified extensively regarding acts of sexual abuse by Flores, her father, beginning when she was nine or ten years old and in the fifth or sixth grade and continuing until she was fifteen and in the eighth or ninth grade. She testified the conduct began after her parents were divorced and Flores moved in with her uncle. J.F. was nine or ten years of age and in either the fifth or the sixth grade at that time. The conduct continued for approximately two or three years. When J.F. was "around 12," the conduct stopped "for several months" while Flores lived with Nereida, an ex-girlfriend. However, according to J.F., when Flores moved from Nereida's home to the home of another ex-girlfriend, Jessie, the conduct resumed and continued while he lived there for approximately two years. From this testimony, the jury could have determined that J.F. was twelve and thirteen years of age at this time. J.F. also

---

[3] Flores also generally contends that the charge error and the State's closing argument discussed later created a serious probability of a non-unanimous jury verdict. However, this contention is inadequately briefed because Flores does not provide a clear and concise argument for this contention "with appropriate citations to authorities and to the record." *See* TEX. R. APP. P. 38.1(i).

testified that when she was fourteen, Flores moved to Joanne's home, where the abuse continued for about a year. Finally, according to J.F., when she was fifteen and in the eighth or ninth grade, the abuse stopped when Flores moved into Vivian's house.

In review, as to Flores's claim that this non-binding language in the instruction paragraph of the Count 1 charge allowed for the consideration of incidences that occurred after July 31, 2009, when J.F. turned fourteen, the charge instructed the jury that the offense of continuous sexual abuse of a child applies only to children younger than fourteen years of age. The application paragraph for Count 1 required the jury to find that J.F. was younger than fourteen when the acts of abuse occurred. The jury knew from the evidence that J.F. turned fourteen on July 31, 2009. Thus, as the Austin Court reasoned in *Martin*, notwithstanding the trial court's instruction that the State was not bound by any particular date but only by the date that the indictment was filed, the jurors were required to find that the period of continuous sexually abusive conduct occurred before J.F.'s fourteenth birthday in order to convict Flores under Count 1. *See* 335 S.W.3d at 874. Therefore, considered as a whole, we conclude that the court's Count 1 charge was not erroneous in this respect. *See id.*

### 2. Effective-Date-of-Statute Challenge

However, "a person cannot be punished as a criminal for conduct that was innocent when done." *Id.* at 876 (citing *Collins v. Youngblood*, 497 U.S. 37, 42–44 (1990); *Rodriguez v. State*, 93 S.W.3d 60, 66 (Tex. Crim. App. 2002)). In this case, the jury could not have convicted Flores of conduct that occurred prior to September 1, 2007, the effective date of the statute. More specifically, it was error when the

9

Count 1 charge failed to qualify the instruction regarding the nonbinding nature of the alleged dates by (1) requiring the jury to find that the offense alleged in Count 1 had to have been committed on or after September 1, 2007; or (2) directing the jurors not to convict Flores under Count 1 based on a finding of sexually abusive conduct prior to September 1, 2007. *See id.* at 874. Because the trial court's unqualified instruction "'present[ed] the jury with a much broader chronological perimeter than is permitted by law'" with respect to Count 1 and pre-September 1, 2007 conduct, we agree with Flores and the State that the charge was erroneous in this respect. *See id.* (quoting *Taylor v. State*, 332 S.W.3d 483, 488–89 Tex. Crim. App. 2011)).

In addition, the State's closing statement included, in relevant part, the following:

> Now in this case we have—we have seven different counts. Count 1 was continuous sexual abuse of a child. Counts 2 and 5 were sexual assault of a child, and the rest of the counts were indecency with a child by contact.

> Now in each one there's a little bit—paragraphs that I kind of want to clarify for you guys, so that way there is no question as to what y'all's job is when you go back to deliberate. First, age. In Count 1 we have to prove that the defendant was 17 years or older and that the victim was under the age of 14, and we did that.

> If you remember the testimony from [J.F.] herself, she told you that when the first time this started happening she was around 9 or 10 years old and the defendant was somewhere in his 20s. That's for Count 1. The rest of the counts, all we had to prove was that the victim, [J.F.], was under the age of 17. And if you remember what she said, she said this started back probably, roughly, around 2006, when she was 9, all the way up until she was 15 years old.

> The next thing I want to bring to your attention, the "on or about" language on the dates of all the different counts. If you remember, the Judge said "on or about" and then she gave you the date. Well, what that means is that the State is not bound by specific date in particular. That just means that it is, roughly, around that period of time.

10

So, if you remember, in Count 1, the Judge read to you that the allegation that the offense was committed on or about September 1st, 2007, all the way through July 30th, 2009, and any time before this indictment was filed, which was on August 9th, 2011. Now, what does that mean?

That just basically means that you do not have to prove a specific date that each offense occurred. As long as it was within that period of time, from on or around September 1st, 2007, all the way up to August 9th, 2011, as long as we prove that those allegations and those charges fell within that period of time, we have met our burden.

As in *Martin*, while this closing statement reminded the jurors that the State was not required to prove the exact dates alleged, it specifically told the jurors that Count 1 was concerned with continuous sexual abuse committed before J.F.'s fourteenth birthday. *See* 335 S.W.3d at 875. However, as in *Martin*, the State's argument failed to inform the jurors that Count 1 did not encompass Flores's sexually abusive conduct before September 1, 2007, when the statute became effective. *See id.*

Nonetheless, being guided by the reasoning of our sister court, we conclude that the charge error was not egregiously harmful. *See id.* Although the jury could not lawfully convict Flores for continuous sexual abuse based on his conduct prior to September 1, 2007, the jury could consider that conduct as circumstantial evidence of Flores's conduct between September 1, 2007 and J.F.'s fourteenth birthday. *See id.* (citing TEX. CODE CRIM. PROC. ANN. art. 38.37 (West Supp. 2010)). And Flores's defense, as in *Martin,* was that the complainant's testimony was not credible and that no acts of sexual abuse occurred. *See id.* If the jurors believed J.F., which it is clear that they did, it is unlikely that they believed the sexually abusive acts only occurred before September 1, 2007. *See id.* The evidence supports a finding beyond a

11

reasonable doubt that Flores committed two or more acts of sexual abuse against J.F. during a period of thirty or more days beginning on or after September 1, 2007 and ending no later than her fourteenth birthday. *See id.* J.F. testified that when she was twelve and thirteen years old and when Flores lived at Jessie's house, she would go to visit him every week or every other week. At this time, the statute was in effect. According to J.F., Flores always took her "to his room and to the restroom, and he put his penis in [her] mouth and in [her] vagina and in [her] butt," and it happened "a lot of times." This testimony alone is sufficient to support Flores's conviction under Count 1. *See id.* Thus, the jurors could have lawfully convicted Flores for continuous sexual abuse of a child even if it had been properly instructed not to base a conviction of Flores's conduct prior to September 1, 2007. *See id.*

In sum, the evidence of Flores's sexually abusive conduct before September 1, 2007 could be considered by the jury as circumstantial proof of his conduct after that date. And there is sufficient evidence of Flores's sexually abusive conduct after September 1, 2007 to support his conviction under Count 1. Therefore, having considered the error in light of the remainder of the charge, the argument of counsel, and the state of the evidence, we conclude that the error did not cause Flores egregious harm. *See Stuhler*, 218 S.W.3d at 619; *Cueva*, 339 S.W.3d at 858–59. We overrule Flores's first and second issues.

## II. PROSECUTORIAL MISCONDUCT

By his third issue, Flores complains of prosecutorial misconduct as to all counts. He argues that the State violated his constitutional rights when the prosecutor asked

12

him whether certain prosecutorial witnesses lied. Flores asserts that he was deprived of a fair trial because through this line of questioning the prosecutor made him look bad in front of the jury. He also claims that the prosecutor's questions invaded the province of the jury to determine the credibility of witnesses and the weight to be given their testimony.

"The proper method of preserving error in cases of prosecutorial misconduct is to (1) object on specific grounds, (2) request an instruction that the jury disregard the comment, and (3) move for a mistrial." *Ajar v. State*, 176 S.W.3d 554, 565–67 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (citing *Penury v. State*, 903 S.W.2d 715, 764 (Tex. Crim. App. 1995) (en banc) (per curiam); *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993) (en banc)). In this case, Flores did not object to any error based on prosecutorial misconduct. By failing to object on this theory at trial, Flores has preserved nothing for our review. *See Perkins v. State*, 902 S.W.2d 88, 96 (Tex. App.—El Paso 1995, writ ref'd). We overrule Flores's third issue.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

As to all counts, Flores contends by his fourth issue that his trial counsel was ineffective when he failed to object to the State's questions regarding the credibility of witnesses. Flores complains of the following exchange that occurred when the State cross-examined him:

> Q. And you heard [your wife's] testimony when she said that your response was, "What did [J.F.] tell you?" Without her even mentioning [J.F.'s] name, that was your response to her. Do you remember her saying that?
>
> A. Can I say the truth?

13

Q. I'm asking you: Do you remember her saying that?

A. Well, yeah, I heard her say that.

Q. And your response to that, without her even having to say—to say anything about [J.F.], was, you knew that it had something to do with all the rape going on, correct?

A. It was a text to me.

Q. So, it was what was said, but through text message?

A. And it wasn't that, what you are saying. You weren't there, so it was me and her only.

Q. So your wife . . . was lying.

A. Yes, sir, she was lying.

Q. And speaking of text messages, did you ever text your wife or try to get ahold of [J.F.] saying that none of this was her fault?

A. No.

     . . . .

Q. You never did try to relay that message to [J.F.]?

A. No. It was for somebody else, but no, not for [J.F.].

Q. So your wife . . . is a liar?

A. Yes, sir, she's lying.

Q. Now, did [A.F, your son] also lie?

A. No.

Q. Because awhile ago, when [your counsel] was asking you questions, [A.F.] came in here and he told this jury that he had noticed strange things in retrospect, thinking back; he thought that it was strange that you would always take [J.F.] into the room alone and close the door.

14

A. Your question—

Q. Not just once but several times—

A. What's your question?

Q. —and just the two of y'all.

A. What's your question?

Q. Is he lying?

A. Yes, he is.

Q. So he is a liar, even though just a second ago you said he was not a liar?

A. About—we were talking about the phone first; but you took it to the other thing, so, yes.

Q. So sometimes he's a liar, and sometimes he's not?

A. About the incidents, yes, not about the phone.

Q. So [your wife] is a liar and [A.F.] is a liar?

A. Yes.

## A. Standard of Review

We apply a well-established, two-pronged test to ineffective assistance of counsel claims. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (en banc). First, appellant must show that his counsel's performance was deficient; second, appellant must show the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

In evaluating the effectiveness of counsel under the first prong, we look to the

15

totality of the representation in the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *Strickland*, 466 U.S. at 688–89. An allegation of ineffective assistance must be firmly grounded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 814. However, in the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel. *Id.* at 813–14. Also, "in the absence of evidence of counsel's reasons for the challenged conduct, an appellate court commonly will assume a strategic motivation if any can possibly be imagined," and we "will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (internal quotations omitted).

The second prong of Strickland requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable. *Strickland*, 466 U.S. at 687. In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. *Id.* at 697. "Finally, an appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Garcia*, 57

16

S.W.3d at 440 (citing *Strickland*, 466 U.S. at 697).

## B.  Discussion

For an undetermined reason, Flores's trial counsel did not object to the challenged questioning.   The State asserts that counsel's apparent trial strategy was to show that the charges against Flores were false.   Trial counsel's voir dire and his opening and closing statements support this assertion.   So it could have been counsel's trial strategy not to object because this line of questioning was within his overall strategy.   *See id.*

Because trial counsel has not had an opportunity to articulate his strategy and because the record is silent as to any explanation for trial counsel's actions, we conclude that Flores's has failed to rebut the presumption that this was a reasonable decision.   *See Thompson*, 9 S.W.3d at at 814.   And in the absence of evidence of counsel's reasons for the challenged conduct we assume a strategic motivation as the State asserts and conclude that counsel's performance was not so outrageous that no competent attorney would have engaged in it and so was not deficient.   *See id.*

Having concluded that Flores has not satisfied the first prong of the *Strickland* test, we need not consider the second prong.   *See id.* (citing *Strickland*, 466 U.S. at 697).   Nonetheless, even if we were to conclude that trial counsel's performance was deficient, Flores cannot show that he was deprived of a fair trial.   "Under Texas precedent . . . improper veracity questions are generally held harmless because they merely emphasize the obvious:   that the defendant disagrees with the State's witnesses' factual assertions."   *Temple v. State*, 342 S.W.3d 572, 615 (Tex. App.—

17

Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013) (reviewing improper-veracity-question cases). For example, in *Creech v. State*, the Texas Court of Criminal Appeals held that while it is not proper for an attorney to question a defendant about the truthfulness of another witness's testimony, it is not harmful because it merely highlights that a defendant believes his version of events rather than the State's version. 329 S.W.2d 290, 291 (Tex. Crim. App. 1959) ("[W]hen the appellant said that the officer was lying, he was merely saying that his version of the affair was correct and that of the officer incorrect. We see nothing in such answer which would tend to bring him into disrepute with the jury."); *see also Salcido v. State*, 342 S.W.2d 760, 762 (Tex. Crim. App. 1961) (per curiam) (holding that overruling the defendant's objection to a question asking him on cross-examination whether a witness to the contrary had told the truth was harmless error, even though the objection should have been sustained). In this case, although it was not proper for the prosecutor to ask Flores about the truthfulness of the testimony of his wife and his son, it was not harmful because it merely highlighted that Flores believed his version of events rather than the State's version. *See Creech*, 329 S.W.2d at 291; *see also Salcido*, 342 S.W.2d at 762. We conclude Flores has failed to prove either prong of *Strickland*.[4] We overrule his fourth issue.

## IV. DOUBLE JEOPARDY

---

[4] Flores is not foreclosed from presenting his claim via collateral attack by virtue of an application for post-conviction writ of habeas corpus. *See Ex parte Nailor*, 149 S.W.3d 125, 130–31 (Tex. Crim. App. 2004).

18

By his fifth issue, Flores contends that the judgments of conviction for sexual assault of a child (Counts 2 and 5) and indecency with a child by contact (Counts 3, 4, 6, and 7) violate the Double Jeopardy Clause, because the offenses for which he was found guilty are lesser-included offenses of Count 1, continuing sexual abuse of a child. Flores premises his argument on the instructive language in Paragraph 6 of the Count 1 Charge that is set out in full in Section I.B. above.   Flores reasons that this language "does not bind the State to any one particular date but may include any day prior to AUGUST 9, 2011, the day the indictment was filed," and, therefore, Count 1 became the same offense as those charged in Counts 2 through 7.   Flores claims that his double-jeopardy claim is apparent on the face of the record because the language of Paragraph 6 of the Count 1 charge opened the door to purported offenses for Count 1 that went well beyond the limitation of section 21.02, making the offenses for which he was convicted under Counts 2 through 7 lesser-included offenses.

## A.   Applicable Law

The Double Jeopardy Clause of the Fifth Amendment "prohibits the State from putting a defendant in jeopardy twice for the same offense."   *Hill v. State*, 90 S.W.3d 308, 313 (Tex. Crim. App. 2002) (en banc) (citing *Arizona v. Washington*, 434 U.S. 497, 503 (1978); *Alvarez v. State*, 864 S.W.2d 64, 65 (Tex. Crim. App. 1993) (en banc)); *see* U.S. CONST. amend. V.   Specifically, it protects persons against multiple punishments for the same offense.   *Gonzales v. State*, 304 S.W.3d 838, 845 (Tex. Crim. App. 2010).   "In the multiple-punishments context, two offenses may be the same if one offense stands in relation to the other as a lesser-included offense, or if

19

the two offenses are defined under distinct statutory provisions but the Legislature has made it clear that only one punishment is intended." *Littrell v. State*, 271 S.W.3d 273, 275–76 (Tex. Crim. App. 2008). "Sameness in this context is a matter of legislative intent." *Id.* at 276. When an appellant does not raise a double jeopardy claim in the trial court, as here, he must show that any double jeopardy violation is apparent on the face of the record. *See Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006); *Gonzalez v. State*, 8 S.W.3d 640, 642–45 (Tex. Crim. App. 2000) (en banc).

## B. Discussion

Here, the jury returned a verdict of guilty on Count 1, the offense of continuous sexual abuse of a child. We have already concluded that there was no error regarding the restriction of J.F.'s fourteenth birthday in the Count 1 charge. And we have determined that despite the trial court's instruction, the jurors were required to find that the period of continuous sexually abusive conduct occurred before July 31, 2009, J.F.'s fourteenth birthday, in order to convict Flores under Count 1. Flores now asserts that the remaining offenses for which he was convicted are lesser-included offenses of Count 1.

Within section 21.02, the Legislature included the following relevant language expressing its intent regarding multiple punishments for continuous sexual abuse:

(e) A defendant may not be convicted in the same criminal action of an offense listed under Subsection (c)[, which includes indecency with a child by contact and sexual assault of a child,] the victim of which is the same victim as a victim of the offense alleged under Subsection (b) [continuous sexual abuse of a child] unless the offense listed in Subsection (c):

. . . .

20

(2) occurred outside the period in which the offense alleged under Subsection (b) was committed . . . .

*Id.* § 21.02(e)(2). Based on this language, it appears the Legislature did not intend to allow a defendant convicted of continuous sexual abuse to also be convicted for the sexual assault of or indecency with the same child if the sexual assault or indecency at issue and the continuous sexual abuse occurred within the same time periods. *See id.* § 21.02(c)(2 & 4), (e); *Littrell*, 271 S.W.3d at 276. However, based on this language, it appears the Legislature did intend to allow a defendant convicted of continuous sexual abuse to be convicted for sexual assault of or indecency with the same child if the sexual assault or indecency at issue occurred outside the period in which the continuous sexual abuse occurred. *See* TEX. PENAL CODE ANN. § 21.02(c)(2 & 7), (e)(2); *Littrell*, 271 S.W.3d at 276.

In this case, Count 2 involved the charge of sexual assault of a child alleged to have been committed on or about September 1, 2009; Count 3, indecency with a child on or about September 10, 2009; Count 4, indecency with a child on or about September 10, 2009; Count 5, sexual assault of a child on or about December 1, 2010, Count 6, indecency with a child on or about November 30, 2010; and Count 7, indecency with a child on or about November 30, 2010. J.F. turned fourteen on July 31, 2009. J.F. testified to numerous incidents of sexual contact and penetration that occurred during the year that Flores lived with Joanne. According to J.F., her first visitation with Flores at Joanne's house was when she was fourteen years old. So all offenses in Counts 2 through 7 occurred outside the period in which the offense of

continuous sexual abuse of a child in Count 1 occurred.   *See* TEX. PENAL CODE ANN. § 21.02(e).   Flores has not shown that any double jeopardy violation is apparent on the face of the record.   *See Langs*, 183 S.W.3d at 687; *Gonzalez*, 8 S.W.3d at 642–45.   We overrule Flores fifth issue.

## V. CONCLUSION

We affirm the judgments of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
17th day of April, 2014.