**Opinion issued November 17, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00823-CR

———————————

**JUAN J. MARTINEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 506th District Court**
**Grimes County, Texas**
**Trial Court Case No. 17,543**

---

## MEMORDANDUM OPINION

A jury found Juan J. Martinez guilty of one count of aggravated sexual assault

of a child and two counts of indecency with a child. The trial court found true the

State's enhancement allegation that Martinez had a prior conviction for sexual

assault of a child and assessed Martinez's punishment at life confinement. In nine issues, Martinez contends that his convictions should be reversed because:

(1) the evidence was not sufficient to permit the jury to find him guilty of the three charged offenses;

(2) the evidence was not sufficient to permit the trial court to find that the enhancement allegation was true;

(3) the trial court erred by excluding evidence that the complainant's mother knew of sexual misconduct by another person in her home;

(4) the trial court erred by admitting his prior conviction for sexual assault during the guilt-innocence phase of the trial;

(5) the trial court erred by admitting the resume of the State's forensic expert and the expert's testimony about the complainant's credibility; and

(6) the trial court erred by admitting a pediatric nurse practitioner's report regarding the complainant's sexual assault examination.

We affirm the trial court's judgments of conviction.

**Background**

A grand jury indicted Martinez for one count of aggravated sexual assault of a child and two counts of indecency with a child. *See* TEX. PENAL CODE §§ 21.11(a)(1), (c)(1), 22.021(a)(1)(B)(i), (2)(B). All three counts concerned the same child, his 13-year-old daughter. The indictment included an enhancement

2

paragraph alleging that Martinez had previously been convicted of a felony sexual assault of another child in Colorado.

Before trial, the court held a hearing regarding the admissibility of two of the State's exhibits. The first was a certified copy of a Sentence Order issued by a Kit Carson County, Colorado, district court finding Juan Jose Martinez guilty of violating Section 18-3-402(1)(e) of the Colorado Criminal Code. That statute provides that a person commits misdemeanor sexual assault if he "knowingly inflicts sexual intrusion or sexual penetration" on another who is at least 15 years of age but less than 17 years of age if the person is at least 10 years older and the two are not married to one another.[1] COLO. REV. STAT. § 18-3-402(1)(e), (3). The second exhibit was an undated letter on Texas Department of Public Safety letterhead advising that conviction for specified Colorado offenses requires registration as a sex offender under Texas law. The trial court found that this evidence was likely to be admitted at trial and that it was adequate to support a jury finding that Martinez committed the Colorado offense.

Several witnesses testified at trial for the State. The defense presented none.

---

[1] Though it is a misdemeanor under Colorado law, this offense is treated as a felony in Texas for purposes of sentencing enhancement so long as its elements are substantially similar to designated Texas offenses. *See* TEX. PENAL CODE § 12.42(c)(2)(B)(v). One of the designated Texas offenses is so-called statutory rape. *See id.* §§ 12.42(c)(2)(B)(ii), 22.011(a)(2), (c)(1). Martinez does not dispute the substantial similarity of this Texas offense's elements.

The State's first witness was Veronica, the complainant's stepmother.[2] Martinez was Veronica's husband at the time of the offenses for which he was indicted. She had six children of her own; Veronica, Martinez, and these six children were under one roof when Martinez's own daughter, the complainant, came to live with them in the summer of 2011. The complainant shared a bedroom with Veronica's daughter, who was seven or eight years old at the time.

Veronica testified that she and her younger daughter were both heavy sleepers. But at around 5:00 on the morning of November 2, 2013, Veronica awoke and noticed that Martinez was not in the living room, where he usually slept. She looked for him and found him asleep in the complainant's bed, shirtless and with his arms wrapped around her with her face pressed against his chest. Veronica said they "looked like lovers," rather than a father and daughter. She ripped the covers off of them and heatedly demanded an explanation from Martinez. Martinez explained that he went to sleep in the girls' room because he was hot and the air conditioning cooled that area. Veronica testified that the air conditioning cools the living room too and that when she found Martinez in the girls' room he was under a "really, really thick" blanket. She was upset, so she left and went to the store.

---

[2] We refer to the complainant simply as "the complainant" and to her stepmother using the pseudonym "Veronica."

4

Later in the afternoon, Veronica began questioning the complainant and the complainant started shaking and tearing up. The complainant began crying hysterically when Veronica asked if Martinez was touching her. The complainant told her that Martinez touched her on her arms, legs, stomach, and breasts. Veronica took the children to her brother's house and then confronted Martinez and told him he had to leave. He went inside to gather some of his possessions and Veronica called the Navasota Police Department. Police officers arrived shortly after Veronica's call, spoke to both her and Martinez, and issued Martinez a criminal trespass warning. Veronica brought all of the children back to the home later that day after Martinez left.

The complainant told Veronica more the next day. Veronica testified that the complainant was crying and said that Martinez had been touching her for about a year and a half. The complainant told her that his abuse escalated over time. At first, Martinez would simply lay down with her. He subsequently began touching her stomach, breasts, and bottom.

The complainant continued to live with Veronica through November and December 2013. Veronica testified that the complainant became "more distant" and that "she was always in her room crying, always huddled in a ball." Veronica discovered that the complainant "was cutting herself." When Veronica discovered the cutting, the complainant revealed to her that Martinez had had sexual intercourse

5

with her.  The complainant told Veronica that Martinez had become more sexually aggressive by the time the abuse was discovered.  In response to these new revelations, Veronica again called and met with police officers, who told her to take the complainant to a forensic examiner and a sexual assault nurse examiner.

Veronica also testified that Martinez told her that he previously was convicted of the sexual assault of a 17-year-old girl in Colorado.  But Veronica did not know the details of the crime.  She said that Martinez told her that "he went to jail for it" but did not have to register as a sex offender.

On cross-examination, Veronica acknowledged that she did not notice anything amiss before she found Martinez sleeping with the complainant and that her knowledge of the underlying events was based on what the complainant told her in large part.  She agreed that she told law enforcement officers that the complainant had said that Martinez had intercourse with her at least 20 times.  Veronica also acknowledged that she filed for divorce from Martinez before the allegations of sexual intercourse emerged.

Officer J. Tielke of the Navasota Police Department testified next.  He and his partner responded to Veronica's November 2 call.  When he arrived at the residence, he identified Martinez by his driver's license and spoke with him and Veronica, who were both upset.  Veronica told Tielke that Martinez had inappropriately touched his 13-year-old daughter.  Martinez told Tielke that "he was getting kicked out of the

6

house" because Veronica "caught him in bed with his daughter," though he claimed that he was "laying on top of the covers" and merely "showing her affection and giving her a hug at the time."

Officer Tielke discussed the situation with Martinez near another officer's vehicle and this discussion was video recorded by his own vehicle's dash camera while the audio was partially recorded by his body microphone; this video was admitted into evidence and played for the jury. In the video, Martinez denied touching his daughter in an inappropriate fashion. Officer Tielke issued Martinez a criminal trespass warning, but did not arrest him. On cross-examination, Tielke conceded that he did not have any knowledge of the events other than what he was told.

The State then called A. Klawinsky, with the Navasota Police Department, who investigated the allegations concerning Martinez. Klawinsky scheduled a forensic interview of the complainant, which Klawinsky remotely viewed on a television monitor. During this interview, she learned of Martinez's prior offense in Colorado and she subsequently contacted Colorado law enforcement agencies and obtained their reports regarding the offense.

Several days later, Klawinsky interviewed Martinez at the police station. Martinez voluntarily spoke with her and another investigator for about 35 minutes. He was Mirandized and their conversation was recorded on video. This recorded

interview was admitted into evidence and played for the jury. During the interview, Martinez initially denied any wrongdoing and claimed that any touching of his daughter involved no more than fatherly affection. As the interview progressed, however, Martinez's story changed. He denied touching his daughter's breasts or vagina throughout, but he also contended that, if he ever touched her inappropriately, it was unintentional. Martinez later reiterated that any inappropriate touching was unintentional and explained that he just did not know how to show his daughter that he loved her. He repeatedly denied having ever been in bed with his daughter under the blanket, but he subsequently admitted that he was under the blanket with her when Veronica found him in his daughter's bed. In addition, he eventually stated that he realized afterward that he had been wrong in the way he held his daughter that morning. Martinez further admitted that he became aroused while lying down with his daughter on another occasion and that he had left her bed three or four other times to forestall any inappropriateness. At one point he exclaimed, "I need counseling."

Klawinsky conferred with the district attorney's office, and a warrant was issued for Martinez's arrest for indecency with a child. After Martinez was arrested, Veronica contacted Klawinsky with new information, specifically that Martinez had sexual intercourse with the complainant. In response, Klawinsky scheduled another forensic interview of the complainant and a sexual assault examination, which were

8

conducted in January 2014. Klawinsky remotely viewed the interview but not the examination. After this additional investigation, the grand jury indicted Martinez.

On cross-examination, Klawinsky acknowledged that her only sources of information were Veronica, Martinez, and the complainant. She further acknowledged that she did not directly speak with the complainant.

Jane Riley, a pediatric nurse practitioner, testified next. She performed a sexual assault examination on the complainant in January 2014. She identified the form she filled out as she made her examination of the complainant and the State offered it into evidence. Over the defense's hearsay objection, the trial court admitted the form. Riley first took a general medical history from the complainant. The complainant told Riley that she had some difficulty sleeping, and that she was angry at her father. The complainant also told her that she did not want to talk to anyone or do anything and that she previously had been cutting herself. When Riley asked the complainant what happened to her, she stated that "all he did was touch me" but then said "there was one time he did go all the way." The complainant indicated that intercourse hurt and that she was sore the morning after. Riley then performed a physical examination. She testified that an examination of the female genitalia will not necessarily reveal signs of sexual intercourse or injury. In the complainant's case, Riley did not see any signs of injuries or indications that she had been sexually assaulted. What she saw, however, was "not inconsistent" with the

9

complainant's account. Riley's final diagnostic impression was that the complainant gave her "a history consistent with sexual assault and that her exam was normal, which does not rule out that the sexual assault happened."

On cross-examination, Riley agreed that her physical examination did not reveal any visible indication of sexual activity. Nor were there any visible signs of sexual abuse. Riley conceded that her conclusions ultimately were based on what the complainant told her. She further acknowledged that she had testified in many cases and that part of her training concerned how to present herself before a jury.

Cameron Collins, the forensic examiner who interviewed the complainant in November 2013 and January 2014, then took the stand. She testified that she had conducted and observed about 600 interviews and had worked in the field of forensic interviewing for about five years. Collins identified a copy of her resume, which listed her professional training and activities, and the State offered it into evidence. Over the defense's relevance objection, the trial court admitted it. Collins testified that abused children may go through several stages when the abuse is discovered, which can include denial, tentative or limited disclosure, active or full disclosure, recantation, and reaffirmation. She stated that not every child goes through all of these stages, but that "they'll go through maybe two or three of those at least." Because disclosure is a process, it is not uncommon for children to fail to disclose all of the details at once. Collins also discussed the phenomenon of delayed

disclosure, which occurs when "the abuse has been happening for quite some time" and the child eventually decides to "talk about what's been happening." Collins opined that children have various reasons for not coming forward sooner, such as the trust they place in a loved one who is abusing them, threats of harm, fear that they will be disbelieved, and fear of the consequences of divulging the abuse.

With respect to the complainant, Collins testified that no one raised any concerns with her about coaching before the interviews. Nor did she detect any signs of coaching. Though Collins and the complainant discussed a number of events that occurred between the complainant and Martinez, Collins's trial testimony on direct examination focused on one in particular. During the first interview, the complainant told Collins that Martinez had rubbed her vagina. The complainant said that Martinez came into her bedroom around 2:00 a.m. and told her to scoot over so that he could lie down next to her. When he did so, Martinez pulled her "very tight to him" and the complainant could feel his erection pressing against her. Martinez began rubbing her arms and then her side, back, stomach, and breasts. He then proceeded to rub her legs, first on the outside of her pajama bottoms, then on the inside of them. Eventually, Martinez placed his fingers inside of her underwear and rubbed her vagina. The complainant specified that there was skin-to-skin contact and provided details indicating that this contact was not momentary or accidental.

11

Collins initially testified about the second interview in general terms, noting that it took place because the complainant had disclosed new information. Collins opined that this sort of disclosure of details over time was typical. The complainant's demeanor differed somewhat between the two interviews. In the first interview, she was comfortable when talking about everyday life but became withdrawn, stopped making eye contact, and began crying when the subject turned to her abuse. In the second interview, she was much more withdrawn and drew herself into a ball—with her knees pulled up, head down, and arms wrapped around her.

Collins subsequently testified about the specifics of the second interview. The complainant told her that Martinez had "intercourse" with her. Collins asked her what she meant by "intercourse" and the complainant "described it as when a man puts his private in a girl's," specifically in her "vagina." The complainant also described specific details about this encounter, including Martinez's actions before intercourse and the positioning of their bodies. Because Collins did not understand exactly what the complainant meant, she had the complainant show her using dolls. The complainant said she noticed blood afterwards and was sore the following day.

Collins testified that a child simply may be more comfortable disclosing some details to one person than to another. The complainant expressed to Collins that she was afraid no one would believe her and worried about being separated from Veronica as a result of the allegations. In addition, Collins clarified that she does

12

not concern herself with inconsistences between what the child says and what law enforcement officers may have told her. However, if the child herself is inconsistent in what she says during the interview, Collins asks follow-up questions about those inconsistencies.

The State's final witness was the complainant, who was 15 at the time of trial. The complainant testified that when Martinez began touching her it started out as unobjectionable "cuddling." But it progressed with him rubbing her over her clothing and then under her shirt and closer to her "privates." Martinez put his hand under her shirt and touched her breasts and also under her clothes and touched her "private part." He eventually had sexual intercourse with her. The complainant said she did not want to talk about it after it happened. She was worried that doing so would destroy her family and that she would lose her family.

On cross-examination, the complainant acknowledged that Martinez and Veronica had begun to have marital difficulties at some point. She also agreed that she had hoped the family would stay together. The complainant agreed that, in addition to her testimony, she had talked to a number of people about what had happened to her, but she did not recall all of their names. When asked about the nature of the inappropriate touching, the complainant stated that Martinez touched her on her "private part" and clarified that she meant her "vagina." She said this occurred in the room she shared with her stepsister at night when everyone was

sleeping. She could not recollect the time of year. She had on her sleeping clothes at the time—a big t-shirt and some pajama pants. She was wearing underwear; sometimes she wore a bra as well. She also testified that she remembered Martinez having intercourse with her, but again could not remember the time of year when this happened. The complainant testified that both she and Martinez were clothed. Martinez lay behind her and pulled her clothes down to her knees, and then had intercourse with her. She recalled telling Veronica that this had happened many times, but she did not recall telling her that it happened 20 times. However, the complainant testified that Martinez did have intercourse with her often and that sometimes she would be facing him and sometimes not.

After the State's witnesses testified, both sides rested and made closing arguments. In their closing arguments, both sides argued that the verdict essentially turned on whether the jury believed the complainant. The jury found Martinez guilty on all three counts. The trial court entered separate judgments of conviction for each count, found the enhancement allegation of the indictment to be true, and assessed Martinez's punishment at life confinement. *See* TEX. PENAL CODE § 12.42(c)(2)(B)(v). Martinez appeals.

**Discussion**

**A. Evidentiary sufficiency**

In his first three issues, Martinez contends that the proof is not sufficient to support his convictions for aggravated sexual assault of a child and indecency with a child. In his sixth issue, he contends that the proof is not sufficient to support the State's enhancement allegation about the Colorado conviction for sexual assault.

**1. Standard of review and applicable law**

We apply the legal standard for sufficiency of the proof stated in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011); *Pena v. State*, 441 S.W.3d 635, 640 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Under this standard, we "must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Gear*, 340 S.W.3d at 746. We cannot substitute our judgment for that of the jury by reevaluating the weight or credibility of the evidence; instead, we defer to the jury's resolution of conflicts in the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Under this standard, the proof "is insufficient under four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere 'modicum' of evidence probative of an element of the offense; (3) the

15

evidence conclusively establishes a reasonable doubt; or (4) the acts alleged do not constitute the criminal offense charged." *Ryser v. State*, 453 S.W.3d 17, 25 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

A person commits the offense of aggravated sexual assault of a child if, among other things, he intentionally or knowingly causes the penetration of the sexual organ of someone younger than 14 years of age. TEX. PENAL CODE § 22.021(a)(1)(B)(i), (2)(B). The uncorroborated testimony of the child suffices to support a conviction for aggravated sexual assault. TEX. CODE CRIM. PROC. art. 38.07(a), (b)(1); *Johnson v. State*, 419 S.W.3d 665, 671 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). Likewise, uncorroborated outcry testimony—the testimony of another regarding the child's disclosure of the sexual assault—suffices to support a conviction. *Eubanks v. State*, 326 S.W.3d 231, 241 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

A person commits the offense of indecency with a child if, among other things, he touches the breast or genitals of someone younger than 17 years of age with the intent to arouse or gratify the sexual desire of anyone. TEX. PENAL CODE § 21.11(a)(1), (c)(1). Touching a child through her clothing is encompassed by the offense. *Id.* § 21.11(c)(1). The required intent may be inferred from the surrounding circumstances. *Navarro v. State*, 241 S.W.3d 77, 79 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). The uncorroborated testimony of either the child or an outcry

witness suffices to support a conviction for indecency with a child. *Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

To establish a prior conviction, the State must prove beyond a reasonable doubt that a conviction exists and that the defendant was the person convicted. *Tate v. State*, 414 S.W.3d 260, 265 (Tex. App.—Houston [1st Dist.] 2013, no pet.). This may be proven by various means, including documentary proof of the conviction that has enough information to establish the defendant's identity. *Jimenez v. State*, 446 S.W.3d 544, 549 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Witness testimony may bridge evidentiary gaps in the documentary proof of the conviction or the identity of the defendant as the person convicted. *Id.*; *Orsag v. State*, 312 S.W.3d 105, 116–19 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

### 2. Analysis

#### (a) Aggravated sexual assault and indecency with a child

Martinez contends that extensive conflicts in the evidence rendered the jury unable to find him guilty beyond a reasonable doubt. He argues that the testimony of the witnesses varied and that the complainant's account changed over time and lacked details about when and where she was sexually abused. He further argues that the dates of two of the offenses alleged in the indictment are impossible because they postdate the complainant's outcry.

Martinez does not dispute that the complainant was 13 years old at the time of the offenses. The complainant testified that Martinez rubbed her breasts and vagina and had intercourse with her. Though she could not recall the dates on which she was abused, she said it happened several times in the room she shared with her stepsister at night while the family was asleep. This testimony alone is sufficient to support Martinez's convictions on all three counts. *See Jones*, 428 S.W.3d at 169; *Eubanks*, 326 S.W.3d at 241. But the complainant's testimony did not stand alone; Veronica and Collins both testified about the outcries the complainant made regarding Martinez's sexual abuse. Veronica additionally discovered Martinez lying asleep in the complainant's bed and holding her in in what Veronica characterized as a lover's embrace. Finally, Martinez himself corroborated the complainant's allegations to an extent in his recorded interview, in which he acknowledged being in his daughter's bed multiple times, being under the blanket with her once, and being aroused on another occasion.

Martinez nevertheless contends that conflicts in the witnesses' testimony render it insufficient. He argues that while Veronica told authorities that the complainant said he had sexual intercourse with her at least 20 times, the complainant did not make this allegation to anyone else or testify that Martinez had sex with her this many times at trial. Martinez points out that the complainant told Collins of just one alleged instance of sexual intercourse. He further argues that

18

while Collins was aware of the discrepancy concerning the number of instances of intercourse, she made no effort to resolve this factual conflict during her interview and testified that both stories—one instance and 20 instances—could be true. Martinez maintains that a jury's ability to weigh witness credibility is not unlimited and asserts that the conflicts in the evidence are so significant that no reasonable jury could find him guilty of the charged offenses based on this proof.

The record undermines Martinez's characterization of the witnesses' testimony. While the complainant did not recall telling Veronica that Martinez had sex with her 20 times, the complainant did testify that Martinez had sexual intercourse with her often. Similarly, while Collins agreed that she did not attempt to reconcile the factual accounts provided by different people, she explained that this was because her questioning focuses on what the child says during an interview. Collins further explained that she does ask follow-up questions of the child if the child says inconsistent things during an interview. In addition, Collins clarified that two differing accounts about the number of instances of abuse can both be true because a child simply may not be giving a full account during an interview and reiterated that the disclosure of sexual abuse is a process that occurs over time. Martinez does not cite any authority for the proposition that evidentiary conflicts may be so pronounced as to render them beyond the jury's evaluation. We hold that

any inconsistencies or credibility issues were for the jury to resolve. *Isassi*, 330 S.W.3d at 638.

Martinez's complaint about the dates of the offenses likewise does not require reversal. The indictment alleges that he touched the breast and genitals of the complainant on or about November 10, 2013. The proof at trial, however, established that Veronica ejected Martinez from the family home on November 2. But this variance is immaterial because the indictment alleges that Martinez inappropriately touched the complainant "on or about" November 10. When the State alleges an offense occurred "on or about" a specific date, it may prove the offense "was committed on a date different from that alleged in the indictment" so long as it predates the presentment of the indictment and the expiration of any applicable statute of limitations. *Thomas v. State*, 444 S.W.3d 4, 9 (Tex. Crim. App. 2014). All of the evidence at trial concerned sexual abuse alleged to have taken place before Martinez's departure from the family home.

We overrule Martinez's first, second, and third issues.

### (b)     Prior conviction for sexual assault of a child

Martinez contends that the proof was insufficient to find he had previously been convicted of the sexual assault of a child in Colorado. He argues that the State offered no documentary proof of the conviction into evidence and that it did not present any witnesses who connected him with the prior conviction.

Martinez's contentions are not supported by the record. After Klawinsky's testimony, the State sought to admit the Colorado Sentence Order. The defense objected on several grounds, including an objection that any probative value the order had was substantially outweighed by the danger of unfair prejudice. The trial court held the order was admissible under Article 38.37 of the Code of Criminal Procedure and admitted a certified copy of it, which was published to the jury. The order stated the court and case number, identified the defendant as a Juan Jose Martinez who was born on May 28, 1977, and recited that he had been found guilty after pleading guilty to violating "18-3-402(1)(e) – Sex Assault – 10-year age differen." and jailed for the offense. The State also connected Martinez with the Colorado offense with other evidence:

- Veronica's testimony that Martinez told her he had been convicted for sexual assault in Colorado and jailed;

- Tielke's testimony that he confirmed Martinez's identity via his driver's license, including his birthdate of May 28, 1977;

- Klawinsky's videotaped interview with Martinez in which he acknowledged his prior incarceration in Colorado; and

- Klawinsky's testimony that she obtained the Sentence Order from Colorado law enforcement agencies after learning of the conviction.

21

Taken together this proof suffices to permit a factfinder to find beyond a reasonable doubt that Martinez was convicted of the offense referenced in the Sentence Order. *See Jimenez*, 446 S.W.3d at 549; *Orsag*, 312 S.W.3d at 116–19.

We overrule Martinez's sixth issue.

**B.     Evidentiary rulings**

Martinez complains that the trial court erred in several of its evidentiary rulings.  In his fourth issue, he contends that the trial court should have permitted him to question Veronica about the sexual misconduct of one of her sons.  In his fifth issue, Martinez contends that the evidence of his prior Colorado conviction should have been excluded because its probative value was outweighed by it potential for unfair prejudice.  In his seventh and eighth issues, he maintains that the trial court erred by allowing Collins's resume into evidence and by permitting her to opine on the complainant's credibility.  In Martinez's ninth issue, he contends that the court erred by admitting Riley's sexual assault examination report.

**1.     Standard of review**

To preserve an evidentiary error for appellate review, a party must timely object with specificity in the trial court unless the specific ground for the objection is apparent from context.  TEX. R. EVID. 103(a); TEX. R. APP. P. 33.1(a).  The error that the party asserts on appeal must conform to the objection made at trial.  *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).

A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Robbins v. State*, 88 S.W.3d 256, 259–60 (Tex. Crim. App. 2002). Under this standard, we must uphold its ruling so long as it is within the zone of reasonable disagreement; we may not reverse solely because we would have ruled otherwise. *Tillman*, 354 S.W.3d at 435; *Robbins*, 88 S.W.3d at 260. Even if the trial court stated an invalid basis for its ruling, we must uphold the ruling if it is correct on any applicable theory. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002).

### 2. Analysis

#### (a) Sexual misconduct of another person

Martinez contends his counsel should have been allowed to question Veronica about an incident in 2010 in which one of her sons allegedly sexually abused one of her other children because, according to defense counsel, the earlier incident would have made her more watchful. The trial court excluded the proposed testimony after hearing it outside of the presence of the jury. Martinez argues on appeal that this testimony was relevant to Veronica's credibility, given her testimony that she had not noticed anything amiss before she discovered Martinez in bed with the complainant.

To be admissible, evidence must be relevant. TEX. R. EVID. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would

23

be without the evidence" and that fact "is of consequence in determining the action." TEX. R. EVID. 401. Thus, when assessing the relevance of particular evidence, courts must consider the purpose for which the proof is being introduced. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). It is essential that there be a direct or logical connection between the proof and the proposition sought to be proven. *Id.*

The credibility of the State's witnesses is relevant at trial. *See McDuff v. State*, 939 S.W.2d 607, 617 (Tex. Crim. App. 1997). But the trial court's conclusion that the testimony of alleged sexual abuse of another child in the home was not relevant to Veronica's credibility or any other issue in the case was not an unreasonable one. This 2010 incident involved neither Martinez nor the complainant. It occurred before the complainant moved in with the family. The defense did not contend that the complainant misidentified her abuser; it contended that the abuse did not happen. Thus, neither the 2010 incident nor Veronica's knowledge about it made a fact of consequence more or less probable. *See Rivera v. State*, 130 S.W.3d 454, 460 (Tex. App.—Corpus Christi 2004, no pet.) (affirming exclusion of incident of sexual abuse not involving defendant or complainant that defendant sought to introduce to prove complainant's mother's mental state). The trial court therefore did not abuse its discretion by excluding this evidence.

We overrule Martinez's fourth issue.

### (b) Colorado conviction for sexual assault

Martinez argues that the evidence concerning his prior Colorado conviction for sexual assault should have been excluded under Rule 403. He argues that in cases like this one, in which the verdict turns on witness credibility due to the absence of physical evidence, proof that the defendant committed other sexual offenses against children is substantially more prejudicial than probative. He further argues that rigorous application of Rule 403 is especially important in this context to ensure that defendants are not tried merely for being criminals or bad persons in general, a risk which Article 38.37 exacerbates by disabling the application of Rules 404 and 405 in trials for sexual offenses against children.

In trials for sexual offenses against children, the defendant's commission of a separate sexual offense against a child may be admitted "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant," notwithstanding Rules 404 and 405 of the Rules of Evidence. TEX. CODE CRIM. PROC. art. 38.37, § 2(b). Proof of a separate offense, however, arguably may be excluded if its probative value is substantially outweighed by its potential for unfair prejudice. TEX. R. EVID. 403.[3]

---

[3]  This court has applied Rule 403 to Article 38.37. *See Wysack v. State*, No. 01-13-00683-CR, 2015 WL 4366245, at *9 (Tex. App.—Houston [1st Dist.] July 16, 2015, pet. ref'd) (mem. op., not designated for publication); *Victorian v. State*, No. 01-13-01004-CR, 2015 WL 3915966, at *4 (Tex. App.—Houston [1st Dist.] June 25, 2015, pet. ref'd) (mem. op., not designated for publication). The State

If a defendant objects to extraneous-offense evidence under Rule 403, then the trial court must weigh the relevance of the evidence against its prejudicial impact. *Johnston v. State*, 145 S.W.3d 215, 219–20 (Tex. Crim. App. 2004). But it "need not conduct a formal hearing or even announce on the record that it has mentally conducted this balancing test." *Cruz v. State*, 122 S.W.3d 309, 313 (Tex. App.— Houston [1st Dist.] 2003, no pet.). Rule 403 favors admissibility of relevant evidence and carries with it a presumption that probative evidence is more probative than prejudicial. *Hajjar v. State*, 176 S.W.3d 554, 562 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). Moreover, because proof of prior sexual abuse of a child is especially probative of a defendant's propensity to sexually abuse another one, "the Rule 403 balancing test normally will not favor the exclusion of evidence of the defendant's prior sexual assaults of children." *Alvarez v. State*, 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

When applying this balancing test, factors we consider include: (1) how compellingly the evidence of the other crime makes a fact of consequence more or less probable; (2) the evidence's potential to affect the jury in an irrational and incurable way; (3) the degree of delay and distraction caused by the presentation of this extraneous evidence; and (4) the proponent's need for the particular evidence in light of the other admissible proof. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex.

does not dispute Rule 403's applicability.

26

Crim. App. 1997); *Hajjar*, 176 S.W.3d at 561. If these factors, "viewed as objectively as possible, lead to the conclusion that the danger of unfair prejudice substantially outweighed the probative value of the proffered evidence," we "should declare that the trial court erred in failing to exclude it." *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1991) (op. on reh'g).

In *Alvarez*, this court rejected the very arguments that Martinez asserts here. There we concluded that evidence of the commission of other sexual offenses against children was highly probative precisely because the case otherwise turned on witness credibility. 491 S.W.3d at 371. Consequently, the trial court reasonably could have concluded both that the Colorado conviction was compelling proof of Martinez's guilt and that the State had significant need of this evidence. Furthermore, as we explained in *Alvarez*, it is not irrational for jurors to draw conclusions about a defendant's guilt based on proof that he sexually abused other children. *Id.* In addition, we also concluded that proof of the other offenses was prejudicial, but not unfairly so. *Id.* Therefore, the trial court could have reasonably concluded that the Colorado conviction would not affect the jury in an irrational manner. We note that, as in *Alvarez*, Martinez does not identify any particular facts about the Colorado offense that made proof of it uniquely or unfairly prejudicial. *See id.* Nor does he contend that proof of the Colorado offense caused substantial delay or distraction with respect to the offenses for which he was standing trial. Viewed objectively,

27

none of the four Rule 403 factors weigh in Martinez's favor. On this record we cannot conclude that the danger of unfair prejudice associated with the Colorado conviction substantially outweighed its probative value. Thus, the trial court did not abuse its discretion under Rule 403. *See Montgomery*, 810 S.W.2d at 392.

We overrule Martinez's fifth issue.

### (c) Cameron Collins's resume

At trial, defense counsel objected to the admission of Collins's resume on the ground that it was irrelevant. On appeal, Martinez argues that the resume's sole conceivable relevance concerned whether Collins was an expert, which was a decision for the trial court to make rather than the jury.

To the extent that Martinez complains that the trial court abdicated its role as gatekeeper by admitting Collins's resume and deferring to the jury's assessment of her expertise, he made no objection about her qualifications. Thus, he has not preserved for appellate review any complaints relating to her qualifications or the admissibility of her testimony as an expert. TEX. R. EVID. 103(a); TEX. R. APP. P. 33.1(a); *Martinez v. State*, 22 S.W.3d 504, 507 (Tex. Crim. App. 2000).

We overrule Martinez's seventh issue.

### (d) Testimony about the credibility of the complainant

Martinez contends that Collins improperly testified in support of the complainant's credibility. In particular, he argues that Collins's testimony that

children sometimes deny they were abused or recant allegations of abuse was improper. Martinez likewise argues that it was improper for Collins to testify that there was no indication that the complainant had been coached.

Defense counsel did not object at trial to the testimony Martinez complains about on appeal. Thus, Martinez has not preserved any potential error with respect to this testimony. TEX. R. EVID. 103(a); TEX. R. APP. P. 33.1(a); *Oliver v. State*, 32 S.W.3d 300, 303–04 (Tex. App.—San Antonio 2000, pet. ref'd).

We overrule Martinez's eighth issue.

### (e) Riley's sexual assault examination report

At trial, defense counsel objected that Riley's sexual assault report, which included statements the complainant made to her during the examination as well as Riley's conclusions, contained "hearsay conclusions." The State responded that the report came within the exception for statements made for purposes of medical diagnosis or treatment and the trial court agreed with the State. *See* TEX. R. EVID. 803(4). Citing *Garcia v. State*, 126 S.W.3d 921 (Tex. Crim. App. 2004), Martinez contends on appeal that this hearsay exception is inapplicable. In particular, Martinez argues that none of the statements made in the report—whether they are the complainant's statements or Riley's—were made for the purpose of medical diagnosis or treatment. Martinez contends that the report was instead made "as part of an investigation into allegations of a criminal offense."

29

Hearsay—a statement not made by the declarant while testifying at trial that a party offers into evidence for the truth of the matter asserted—is generally inadmissible. TEX. R. EVID. 801(d), 802. However, this general prohibition does not bar a statement made for and reasonably pertinent to medical diagnosis or treatment that "describes medical history, past or present symptoms or sensations; their inception; or their general cause." TEX. R. EVID. 803(4). This exception may encompass medical records documenting the sexual abuse of children. *See, e.g.*, *Sandoval v. State*, 52 S.W.3d 851, 856–57 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (trial court did not err in admitting medical records in their entirety).

Riley was a pediatric nurse practitioner. In that role, she performed "medical exams on children who are suspected of being physically or sexually abused." She examined the complainant. As part her examination, she completed an eight-page report. The report included the complainant's relevant medical history, the complainant's description of the alleged abuse, the results of Riley's physical examination of the complainant, and Riley's diagnostic impressions.

We reject Martinez's contention that Riley's sexual assault examination of the complainant was part of a criminal investigation and therefore not made for the purpose of medical diagnosis or treatment. We have previously recognized that the purpose of these sexual assault examinations is to ascertain whether the child was sexually abused and whether the child needs medical attention. *Sandoval*, 52 S.W.3d

at 857. The contents of Riley's report reflect that she examined the complainant in order to make this diagnosis and determine if treatment was required. In addition, Riley testified that she did not consider herself an arm of law enforcement. She examined the complainant in her capacity as a pediatric nurse practitioner. That Riley's examination of the complainant and her report memorializing the examination was relevant to the law enforcement officers who were investigating the complainant's allegations of sexual abuse does not strip the examination of its medical purpose. Consequently, *Garcia* is distinguishable. There the Court of Criminal Appeals held that Rule 803(4) was inapplicable to statements that the defendant's wife made to an employee of a battered woman's shelter because there was no evidence that she went to the shelter for the purpose of receiving a medical diagnosis or treatment or that she received a diagnosis or treatment from the shelter's employees. 126 S.W.3d at 927. In contrast, Riley's sexual assault examination report reflects this purpose on its face. Thus, the trial court did not abuse its discretion in admitting her report into evidence over the defense's hearsay objection.

We overrule Martinez's ninth issue.

## Conclusion

We affirm the trial court's judgments of conviction.


                                            Rebeca Huddle
                                            Justice

Panel consists of Chief Justice Radack and Justices Higley and Huddle.

Do not publish.  TEX. R. APP. P. 47.2(b).